M. G. McCOOL, V. L. Thomas, the Camille Cailloux Trust (also called the Camille Trust), Earl W. Miller, Trustee, the John F. Cailloux, Jr. Trust (also called the Cailloux Jr. Trust), Earl W. Miller, Trustee, and the Frank Roberts Miller Trust (also called the Miller Trust), John F. Cailloux, Trustee, co-partners d/b/a M–C–M Machine Works, Plaintiffs in Error,

v.

HOOVER EQUIPMENT COMPANY, a corporation, Defendants in Error.

No. 40924.

Supreme Court of Oklahoma.

May 17, 1966.

Shirk, Withington, Work & Robinson, by W. R. Withington, Oklahoma City, for plaintiffs in error.

Franklin, Harmon & Satterfield, Oklahoma City, for defendant in error.

PER CURIAM:

This appeal has been taken to review a judgment of the District Court of Oklahoma County, Oklahoma, rendered against the defendant, M. C. McCool, d/b/a M–C–M Machine Works, et al., in the sum of $4,019.06. The original action was filed by Hoover Equipment Company, a corporation, as plaintiff, and they have cross-appealed seeking a recovery greater than that rendered by the trial court.

Plaintiff dealt in second-hand crankshafts for caterpillar equipment which it sold to its customers to be installed in their equipment. Defendant was in the business of chroming used crankshafts. Defendant furnished plaintiff ten (10) crankshafts upon which it had applied the chroming process for plaintiff. These crankshafts all failed during early stages of use, the longest operation period for any one shaft being 280 hours. The evidence of plaintiff established that the normal life expectancy of a chromed crankshaft was from 3,000 to 10,000 hours. Plaintiff contends that the cause of such failures was due to a defective chroming job by the defendant which resulted in the chrome peeling off the shafts. Damages were sought for these ten (10) crankshafts based on the cost of the total parts, labor and expenses incurred in removing the defective shafts from customers' equipment and replacing them with new parts and a proper shaft.

In addition, plaintiff had nine (9) other shafts in its possession which defendant had

chromed for the plaintiff. Plaintiff sent these shafts to a concern in Denver, Colorado, to be rechromed after suffering the failures on the initial ten (10) crankshafts. Damages were sought for these nine (9) shafts for the cost incurred in having them rechromed which the parties stipulated to be in the amount of $1,135.70.

The action was tried to the court and after all evidence was submitted, the trial court rendered judgment for plaintiff on four (4) of the ten (10) crankshafts used by plaintiff for a total money judgment of $2,833.36. Judgment was entered for defendant on the other six (6) crankshafts actually used by plaintiff. In addition, the court granted a $1,135.70 judgment to the plaintiff for the nine (9) crankshafts not used that were rechromed by the Denver concern.

Defendant appeals from the judgment granted plaintiff and plaintiff cross-appeals seeking damages for the six (6) shafts wherein recovery was denied.

Plaintiff's theory for recovery is that an implied warranty arose out of the contract between plaintiff and defendant. Plaintiff contends that whether the contract be characterized as one for sale of goods or as one for the furnishing of labor and materials is immaterial. The defendant contends that plaintiff's evidence showed only a contract for a work and labor job and no showing of a sale.

Upon examination of the evidence, it appears that the transaction between plaintiff and defendant did not constitute a sale. The plaintiff would send crankshafts which it had removed from customers' equipment to defendant to have the chroming process applied to them. Defendant would then furnish a crankshaft which had undergone the chroming process. There was some confusion in the testimony as to whether defendant returned the same identical crankshafts furnished by plaintiff or whether defendant would pull another crankshaft which it had already chromed from its stock and furnish it to the plaintiff. The testimony of plaintiff's first witness,

its shop foreman, reveals that the transaction between plaintiff and defendant was effectuated with the understanding that they were receiving back the crankshafts which were originally sent to the defendant for the chroming process. The plaintiff's shop foreman testified as follows:

"The Court: Well, where did they get them to rechrome them, tho, is what I am trying to get to?

Answer: They are from—

The Court (continuing): From you or from other people and sell you some that other people have had?

Answer: Well, the deal, I was under the impression that they were rechroming our crankshafts that we sent to them.

Mr. Satterfield: That's right."

Under these circumstances, it is apparent that no sale of the crankshafts themselves was intended or took place. The testimony of other witnesses indicates that the transaction between plaintiff and defendant was purely one whereby the defendant was performing chroming work on crankshafts which it furnished to the plaintiff. They merely applied a chroming process to the crankshafts and furnished a chromed crankshaft, be it the same one delivered to it by plaintiff or a similar crankshaft upon which the defendant had performed the chroming work. The defendant cites the 4th and 5th syllabus from the case of William H. Wise & Company, Inc. v. Rand-McNally and Company, 195 F. Supp. 621, as follows:

"A 'sale' is generally a transfer of interest in property, but not every transfer of personal property constitutes a sale."

"Where service predominates and transfer of personal property is only incidental to transaction, it is 'contract for work, labor and materials' and not a sale."

Under the facts in the instant case, we conclude that the above authority is applicable to the transaction between plaintiff and defendant and, thus, the dealings between these parties constituted a contract for work and labor and not one of sale.

A portion of both parties' briefs is devoted to discussion of authorities as to whether there is an implied warranty on the sale of second-hand goods. Our conclusion that no sale was actually intended or consummated between the parties precludes the necessity of a review of the authorities concerning implied warranty on the sale of second-hand articles.

The question to be answered by this court is whether under the facts and the applicable law did defendant impliedly warrant its work and labor performed in chroming the plaintiff's crankshafts? If so, did the plaintiff's evidence establish a breach of the warranty and the damages flowing therefrom?

The defendant contends that plaintiff has changed its theory on appeal to that of impliedly warranted goods and services rather than that of a sale. We disagree with this proposition. The petition filed by plaintiff contained no reference to reliance on a sale nor did the evidence presented by plaintiff attempt to establish such. It appears that plaintiff relied from the beginning on the theory that the defendant had furnished defective crankshafts and breached an implied warranty made to the plaintiff that same would be fit for a particular purpose. After hearing all the evidence, the trial court found as follows:

"\* \* \* that under the facts and circumstances present in this case, defendant impliedly warranted to plaintiff that the rechromed crankshafts furnished by it would be reasonably fit for use as crankshafts in machines for which said crankshafts were originally manufactured to fit."

■ In the case of Cox v. Curnutt, Okl., 271 P.2d 342, we held:

"Where general contractor contracts to perform work for another requiring exercise of care, skill and knowledge, there is an implied warranty that work which he undertakes shall be of proper workmanship and reasonable fitness for its intended use."

We feel this principle of law to be applicable herein.

■ The defendant undertook to perform the work and labor job of applying chrome to these crankshafts. Unquestionably, the defendant had knowledge of the use to be made of the crankshafts and reliance was placed on their skill and knowledge to perform a reasonable and workmanlike job. We think that the contract for this work carried with it an implied warranty to the extent that the crankshafts would not fail due to a defective chroming process.

The defendant has not asserted that a warranty may not be implied to a contract for labor and materials as well as to a sale. We think the language of Aced v. Hobbs-Sesack Plumbing Company, 55 Cal.2d 573, 12 Cal.Rptr. 257, 360 P.2d 897, cited by plaintiff to be controlling. In this case, the California Supreme Court held a contract involved therein to have been one for labor and material and not of sale and stated:

"There may nevertheless be an implied warranty. It was said in Gagne v. Bertran, 43 Cal.2d 481, 486, 275 P.2d 15, that for historical reasons warranties have become identified primarily with transactions involving the sale or furnishing of tangible chattels but that they are not confined to such transactions. Several cases dealing with construction contracts and other contracts for labor and material show that ordinarily such contracts give rise to an implied warranty that the product will be fit for its intended use both as to workmanship and materials (cases cited)."

We further conclude in connection with the trial court's judgment for plaintiff on four (4) of the crankshafts involved in this suit which plaintiff had installed in its customers' equipment and judgment for the defendant on six (6) of these crankshafts which plaintiff attempted to use,

that same should not be disturbed on appeal.

In Bullard v. Caulk, 206 Okl. 353, 243 P.2d 691, we stated in the first syllabus:

"In jury-waived law action, finding and judgment of trial court will not be disturbed on appeal because of insufficiency of evidence, if there is any evidence reasonably tending to support such finding and judgment."

A review of the evidence in this cause indicates there was sufficient evidence reasonably tending to support the findings of the trial court as to both those shafts wherein the trial court held for the plaintiff and as to those where judgment was rendered for the defendant. Although plaintiff had difficulty with all the crankshafts furnished by the defendant, there is present in the record sufficient credible testimony to establish a reasonable doubt as to whether six (6) of the crankshaft failures were due or caused by the chroming process applied by the defendant. As to these shafts, the trial court found for the defendant. Likewise, the record reveals that there is competent evidence to support the finding of the trial court as to those shafts wherein judgment was rendered for the plaintiff and the finding that the cause of the failure of these shafts was a result of a defective chroming job by the defendant. Therefore, we feel the trial court should be sustained in this regard.

A more serious question is presented in connection with those crankshafts which the plaintiff had rechromed by a different concern without making any attempt to test or use these crankshafts to determine if they were actually defective. The record discloses that the plaintiff had difficulty with all the crankshafts furnished it by the defendant and that failures were consistently occurring whether the cause be as a result of the defective chroming process or from another cause.

The case of Plastic Products Corp. v. Filtrol Corp., D.C., 137 F.Supp. 401, concerned a situation where the defendant had furnished the plaintiff four (4) plastic storage tanks, all of which had failed. The defendant contended that the failures were due to causes other than defects in the tanks. The court responded to this contention as follows:

"* * * [u]nquestionably, the installation of tank number 1 was accomplished amid considerable irregularity; and, if tank number 1 had been the only tank to fail to contain liquid, forceful argument could be advanced the contested shortcomings arose because of improper erection technique. However, such a claim takes on the frivolous when considered in the light of Filtrol's experiences with the other three tanks."

We think this to be sound reasoning and applicable to the case at bar. The testimony of plaintiff's witness, Nicholson, was to the effect that there is no reliable way of determining if improper adhesion has occurred in the chroming process other than actual use. This testimony, in face of the repeated failures which plaintiff encountered with the crankshafts, supports a recovery by the plaintiff. Even though the trial court found the plaintiff's evidence was insufficient on six (6) of the crankshafts actually used to establish the cause of failure to be the chroming work and process, nevertheless, the fact remains that all of the crankshafts tested and used by the plaintiff did, in fact, fail. This was a failure by the plaintiff to sustain his burden of establishing the cause of the six (6) crankshafts to fail and more particularly place the blame on defendant. We do not think the plaintiff should have been required to place the remaining nine (9) shafts in use before he would be entitled to sue for and recover damages for breach of an implied warranty. The plaintiff very naturally relied on its troubled experiences and had these shafts rechromed. It may well be that such a reaction by plaintiff has resulted in a mitigation of damages. Plaintiff's witness, Reich, testi-

fied that it costs three times as much to have a crankshaft fail in an engine as compared to the cost of having it properly chromed.

Defendant contends that judgment of this nature is one of conjecture and inference. The plaintiff was placed in a dilemma under the facts present in this case. The defendant had denied any liability for defects in the shafts. It was a reasonable and prudent act of the plaintiff, in face of the consistent failures encountered, to have the remaining shafts rechromed. We feel under the facts and circumstances that the plaintiff is entitled to recovery of the money paid to defendant for chroming these nine (9) crankshafts.

■ The plaintiff will be made whole by receiving back the money it paid to defendant for chroming these nine (9) shafts. In Markle v. Stekoll, 138 Okl. 171, 280 P. 842, it was held:

"Damages for breach of implied warranty of fitness, where property is worthless, is price paid therefor, including transportation cost and expense incurred in effort to use property."

In the instant case, we feel the proper measure of damages for breach of the implied warranty of fitness under the contract for work and labor to be the amount paid by plaintiff to the defendant to perform the chroming job where further attempts to use the personal property would be frivolous in light of the successive failures.

Therefore, we concur with the result of the trial court permitting plaintiff to recover for those crankshafts which it did not use but had rechromed. We hold the proper measure of damages therefor would be the price paid to the defendant for the cost of the work and labor and that the plaintiff should be permitted to submit evidence to the trial court in support thereof.

The judgment of the trial court awarding the plaintiff damages in the amount of $2,833.36 for the four (4) crankshafts which the trial court found had failed as a result of the chroming service rendered by the defendant is affirmed. The judgment of the trial court denying recovery to the plaintiff on the six (6) crankshafts which the plaintiff attempted to use but did not establish under the evidence that their failure was due to a defective chroming job is affirmed.

The judgment of the trial court finding that the plaintiff was entitled to and legally justified in having those crankshafts which the plaintiff had rechromed by a concern other than the defendant is affirmed, but the damages under this portion of the judgment is remanded to the trial court for the purpose of taking additional evidence in regard to price paid by plaintiff to defendant for these services and judgment should be entered on behalf of plaintiff for that amount, as being the proper measure of damages.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, IRWIN, HODGES and LAVENDER, JJ., concur.

BLACKBIRD, J., dissents.

The Court acknowledges the services of O. L. Peck, Jr., who with the aid and counsel of Paul Sullivan and J. D. DeBois, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to DAVISON, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.