[Civ. No. 1631. Fifth Dist. Apr. 5, 1973.]

HAROLD A. NEWMAN CO., INC., Plaintiff and Respondent, v.
WILLIAM NERO, Defendant and Appellant;
READY POWER COMPANY,
Defendant, Cross-complainant and Appellant;
LINDELL THOMPSON, Cross-defendant and Respondent.

492

**COUNSEL**

McKenna & Fitting and Aaron M. Peck for Defendant and Appellant and for Defendant, Cross-complainant and Appellant.

Fullerton, Lang & Richert and Philip C. Fullerton for Plaintiff and Respondent.

McCormick, Barstow, Sheppard, Coyle & Best and Hollis G. Best for Cross-defendant and Respondent.

**OPINION**

GARGANO, J.—This is a judgment roll appeal by appellants, the Ready Power Co. and William Nero from a judgment in favor of Harold A. Newman Co., Inc. and one Lindell Thompson. Ready Power, a Michigan corporation, is the manufacturer of air conditioning equipment, and Nero is that company's sales and service agent in Fresno, doing business as United Mechanical Equipment Co. The Harold A. Newman Co., hereafter referred to as Newman, is a mechanical contractor. Lindell Thompson

is an installer and repairer of air conditioning systems, doing business as Lindell Thompson Refrigeration and Air Conditioning Co.

The action was instituted by Newman against Ready Power, Nero and Western Greyhound Lines for damages and declaratory relief; the action against Ready Power and Nero was predicated on the theory that Newman installed an air conditioning system for Western Greyhound Lines, that certain units of the system were purchased from Ready Power, that those units were defective and caused the system to break down, that Ready Power replaced the equipment, that the replacement work was negligently performed, causing a second breakdown, and that Newman was damaged in the amount of $5,829.92 for additional replacement parts and labor.

Ready Power filed an answer to plaintiff's complaint. It denied the material allegations and, by way of counterclaim, sought $5,625 in damages for breach of contract; the counterclaim alleged that Newman had agreed to pay for the replacement units and for the cost of installation if Ready Power determined that the first breakdown was not caused by a defect in the original Ready Power equipment. Ready Power also filed a counterclaim to recover the reasonable value of goods and services furnished to Newman; Ready Power filed a cross-complaint against Thompson, alleging that his negligence caused the second breakdown and seeking indemnification for any judgment entered against it under plaintiff's complaint.

After court trial the court made extensive findings of fact. From these findings the court concluded that Newman was entitled to judgment in the amount of $5,640.57 for parts and labor. The court also concluded that Ready Power was not entitled to any compensation for the replacement units it installed after the first breakdown or for the cost of installation. The court determined that Ready Power was not entitled to indemnification from Thompson. Judgment was entered accordingly, and Ready Power and Nero have appealed.

■ Appellants do not, nor can they, challenge the sufficiency of the evidence; in a judgment roll appeal it is conclusively presumed that the evidence supports the court's findings. (*Block* v. *Laboratory Procedures, Inc.,* 8 Cal.App.3d 1042 [87 Cal.Rptr. 778]; *Pierce* v. *Turner,* 205 Cal. App.2d 264, 268 [23 Cal.Rptr. 115].) Appellants' sole attack is directed against the court's findings of fact. They assert that the findings are deficient and do not support the judgment.

The facts, as taken from the court's findings, are as follows: In 1968 Newman installed an air conditioning system for Western Greyhound Lines at its bus station in Fresno; the agreed date of completion was in August

1968. In September 1968 the air conditioning system failed to function because of damages to a compressor unit and a chiller unit caused by water in the refrigerant lines; the units were manufactured by Ready Power and were purchased by Newman from that company through the company's agent, Nero; Newman and Ready Power each sought to attribute the cause of the failure to the other. Ready Power informed Newman that it would replace the original equipment pursuant to its warranty if the units proved to be defective; Newman did not agree to the proposal.

In October 1968 Ready Power, through Nero, engaged Thompson, an independent contractor, to replace the damaged units and to clean, dry and recharge the system. At that time Newman knew that Ready Power was replacing the units and "did not object or assent."

In early November 1968, Nero attempted to start up the air conditioning system but it again failed to function, this time because of a faulty valve. Afterward, Thompson continued with the repair work until December when the system broke down for the second time; Thompson failed to dry out the system before he recharged it with refrigerant, and the acids formed, destroying the replacement compressor. Thereupon, Newman allegedly expended $5,829.92 for labor and parts to repair and replace the damaged replacement unit.

Appellants complain because the court found that the second compressor was destroyed by Thompson's negligence in failing to dry out the air conditioning system before he recharged it with refrigerant, and then held appellants liable for the damages resulting from this negligence. They argue that once appellants employed Thompson, an independent contractor, to replace the damaged Ready Power units, they owed no further duty to Newman and could not be held responsible for the independent contractor's negligence. Appellants assert that the trial court ignored the basic common law rule universally followed in this country, which adheres to the proposition that an independent contractor is ordinarily not liable to third persons for losses attributable to the negligence of the independent contractor.

There is no merit to appellants' contention. The court's findings not only support the conclusion that Ready Power had a nondelegable contractual duty to Newman which was violated vicariously by the independent contractor, Thompson, but the findings also support the conclusion that Ready Power, through its agent Nero, was itself guilty of negligence and violated its contractual duty to Newman. The court found that Nero was Ready Power's agent, that he was a qualified engineer, that he was

present on various occasions in October and in early November 1968 when the replacement units were being installed by Thompson, and that he gave directions and observed methods used. The court found, further, that Nero specifically directed Thompson to dry out the air conditioning system before recharging it with refrigerant, that Nero knew, or should have known, that Thompson was not using sufficient vacuum and that notwithstanding this knowledge Nero did not give Thompson instructions on how to proceed. Finally, the court found that in early November, when the system failed to start because of a faulty expansion valve, Nero discovered that it was partially charged, and thereafter left the job site knowing that Thompson would fail to "evacuate" and would nevertheless recharge the system.

 It is true that an employer of an independent contractor is ordinarily not liable to third persons for losses attributable to the negligence of the independent contractor; this doctrine of nonliability "is founded on the principle that one person should not be compelled to answer for the fault or neglect of another over whom he has no control, and that the employer has a right to rely on the presumption that the contractor will discharge his legal duties owing to his employees and third persons." (57 C.J.S., Master and Servant, § 584, p. 355.) However, the rule is subject to numerous exceptions and has no application where a person, either by contract or law, owes an obligation to another; a person who has assumed the contractual duty to perform a service for another cannot escape his contractual obligation to perform the service in a competent manner by delegating performance to another. (*Capitol Chevrolet Co.* v. *Lawrence Warehouse Co.*, 227 F.2d 169; 41 Am.Jur.2d, Independent Contractors, § 38, p. 800.)

It is patent that in undertaking to replace the damaged units, Ready Power undertook the contractual obligation to use due care in making the repairs; Ready Power obviously purported to replace the equipment pursuant to its warranty and by "not objecting or assenting" Newman gave its implied consent to the repair work even though it may not have agreed to pay for the units if it were determined that the originals were not defective. It is therefore patent that Ready Power could not delegate its contractual duty to Thompson. If, under the authorities, Ready Power cannot escape liability for the negligence of its independent contractor, a fortiori, Ready Power cannot escape liability for the consequences of its own negligence.

The cases upon which appellants rely for the proposition that they are *not liable* for the acts of Thompson are not germane; they are

not cases involving contractual obligations. On the other hand, the case of *Capitol Chevrolet Co.* v. *Lawrence Warehouse Co., supra,* 227 F.2d 169, is authoritative. In that case the United States Court of Appeals, Ninth Circuit, noted that the common law rule immunizing the employer of an independent contractor from liability for damages attributable to the negligence of the independent contractor has no application to contractual duties. The court at page 173 of the opinion said: "The second type of exceptions to the general rule stated is based upon contractual relationships. One who contracts to perform an undertaking is liable to his promisee for the negligence of an independent contractor to whom he delegates actual performance."

Appellants rely on the doctrine of unjust enrichment to contend that the court's findings compel the conclusion that Ready Power was entitled to reimbursement for the reasonable value of the replacement units and for the cost of installation. The findings to which appellants refer, when given a common sense meaning, are these: The original Ready Power equipment was not defective and did not cause the first breakdown; Ready Power was not obligated to replace the equipment free of charge; Ready Power did not intend to give the new units to Newman but intended to be paid for the units and for the cost of installation if it were determined that the original Ready Power equipment was not defective; while Newman did not agree to pay for the replacement units or the replacement work, Newman nevertheless knew the work was in progress and did not "assent or object"; appellants' negligence destroyed the replacement compressor, and it was to repair and replace that compressor that Newman allegedly expended $5,829.92 in labor and parts.

■ Ordinarily, the law will imply a promise to pay for goods and services furnished by one party to another whenever it is necessary to do so to prevent an unjust enrichment. (*Ward* v. *Taggart,* 51 Cal.2d 736 [336 P.2d 534]; *Desny* v. *Wilder,* 46 Cal.2d 715 [299 P.2d 257]; *Kossian* v. *American Nat. Ins. Co.,* 254 Cal.App.2d 647, 650 [62 Cal.Rptr. 225].) However, the court's findings do not indicate necessarily that Ready Power bestowed any benefit upon Newman by replacing the original units; the work was defective and the new compressor was destroyed. Unjust enrichment is an equitable doctrine, and to recover on this theory it is not enough to show that goods or services were furnished to another; it must also be shown that the person to whom the goods or services were furnished received a substantial benefit therefrom and that it would be unconscionable to permit him to retain the benefit without paying for its reasonable value. (*Ward* v. *Taggart, supra,* 51 Cal.2d 736; *Thomasson* v. *Grace M. E.*

*Church,* 113 Cal. 558 [45 P. 838]; *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325 [263 P.2d 655]; Civ. Code, § 1589; Rest., Restitution, § 155.)

■ What appellants really are contending and what the court's findings of fact actually demonstrate is that the findings are ambiguous and do not indicate with required clarity that Newman met its burden of proof on the issue of damages. The court not only found that Newman did not show that the Ready Power equipment was defective, but it also found that Ready Power had shown that "Newman improperly installed the equipment" and, strangely, that the improper installation had not caused the first breakdown. The court then determined that Ready Power was not obligated to replace the damaged units, and this determination, by necessary implication, means that Newman, to meet its own contractual commitments to Western Greyhound Lines, if any, would have had to replace or repair the original equipment at its own cost and expense but for Ready Power's intervention. If this be true, Newman finally replaced damaged equipment it would have replaced or repaired anyway.

We do not know from the findings if Newman expended more money for parts and labor than it would have had to expend in the first place or if the company incurred any other charge or expenses as a result of Ready Power's intervention. How can it be said, with any degree of certainty, that Newman was damaged by Ready Power's negligence? Because this is a judgment roll appeal, we have no evidence to help us reconcile the court's opaque findings with its legal conclusions. Under these circumstances, we must, in the interest of justice, reverse the judgment.

■ Appellants' third contention that they were entitled, as a matter of law, to a judgment of indemnity against Thompson is not supported by the record. As we stated earlier, not only do the court's findings demonstrate that Ready Power had a nondelegable contractual duty to Newman which was violated vicariously by Thompson, but they also demonstrate that Ready Power directly breached the duty. ■ It is settled that a party seeking indemnification must prove that he did not participate, actively or affirmatively, in the wrong which caused the injury beyond the mere failure to perform a duty imposed upon him by law; the right of indemnity "enures to a person who, without fault on his part, . . . has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." (Witkin, Summary of Cal. Law (1969 Supp.) Torts, § 22(a), p. 503.)

The judgment in favor of Thompson on appellants' cross-complaint is affirmed. The judgment in favor of Newman on the complaint is reversed.

Brown (G. A.), P. J., concurred.

Franson, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied May 4, 1973, and the opinion was modified to read as printed above.