# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 1, 2011 Session

## FEDERAL INSURANCE COMPANY A/S/O ROBERT AND JOANIE EMERSON v. MARTIN EDWARD WINTERS, D/B/A WINTERS ROOFING COMPANY

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Hamilton County**
**No. 09C136      W. Neil Thomas, III, Judge**

_____

**No. E2009-02065-SC-R11-CV - Filed October 25, 2011**

_____

The defendant contractor entered into a contract to replace a roof.  When the newly installed roof developed leaks, the defendant hired an independent contractor to make the necessary repairs.  While performing the work, the independent contractor caused a fire, resulting in an $871,069.73 insurance claim by the homeowners.  As subrogor to the homeowners' rights and claims arising out of the fire, the plaintiff insurance company sued the defendant in both tort and in contract.  The defendant filed a motion for summary judgment, asserting that because he had subcontracted the work, he could not be liable.  The trial court granted the motion on both the negligence and breach of contract claims.  The Court of Appeals reversed, holding that the defendant had a non-delegable contractual duty to perform the roofing services in a careful, skillful, and workmanlike manner.  This Court granted the defendant's application for permission to appeal in order to determine the propriety of the claim under the theory of contract. Because the defendant had an implied non-delegable duty to install the roof in a careful, skillful, diligent, and workmanlike manner, the judgment of the Court of Appeals is affirmed.  The case is remanded to the trial court for proceedings consistent with this opinion.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals is Affirmed**

GARY R. WADE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

John Tate Rice, Chattanooga, Tennessee, for the appellants, Martin Edward Winters and Winters Roofing Company.

Michael A. Durr, Charlotte, North Carolina, for the appellee, Federal Insurance Company.

# OPINION
## Facts and Procedural History[1]

In 2007, Robert and Joanie Emerson (the "Emersons") contacted Martin Winters (the "Defendant"), the owner of Winters Roofing Company, about installing a new roof at the Emersons' home in Hixson. After receiving a proposal from the Defendant, the Emersons entered into an oral agreement, whereby the Defendant agreed to replace the roof for the sum of $17,832. While the subject of insurance was not discussed, Robert Emerson, by his sworn affidavit, claimed that he relied on information provided on the Defendant's website, which included representations that he carried general liability and workers' compensation insurance.

During his deposition, the Defendant admitted that his company was not capable of replacing an entire roof. Without informing the Emersons, he subcontracted the job to Terry Monk. A few months after the work was completed, the roof began to leak and developed several areas of standing water. When the Emersons notified him of these issues, the Defendant agreed to take care of the problems and subcontracted the repair work to Bruce Jacobs. Jacobs executed a subcontract with the Defendant, agreeing that "[a]ny and all work will be the responsibility of Bruce Jacobs" and "[a]ny and all leaks/damages caused by work performed . . . will be [his] responsibility to repair or replace." On September 26, 2007, while attempting to make the necessary repairs, Jacobs used a propane torch on a drain cover on the roof. The Defendant was not present at the time. A few hours after Jacobs had completed his work, a fire occurred, causing $871,069.73 in damages to the Emersons' home and personal property. Gary Young, a fire investigator for EFI Global, Inc., concluded that the "fire specifically occurred due to open flame roofing work, which was being conducted by roofer Bruce Jacobs . . . on September 26, 2007."

On the date of the fire, the Defendant did not have liability insurance coverage. He informed the Emersons that Jacobs, an independent contractor who was otherwise unable to pay for any of the damages caused by the fire, was also uninsured. On the day after the fire, the Defendant purchased liability insurance from American Safety Insurance Company ("American Safety"). One week later, American Safety received a report that the fire had occurred on October 3, 2007, seven days after the fire took place. After receiving accurate information as to the actual date of the fire, American Safety denied coverage. Later, the Defendant acknowledged in his deposition that it was "possible" that he had informed an insurance investigator that the fire occurred later than it actually did. When asked during his deposition if he claimed October 3 as the date of the fire in an attempt to obtain liability

---

[1] Because the trial court granted a motion for summary judgment, the facts have been drawn from the pleadings and the documents filed in support of and in opposition to the motion, including the sworn affidavit of Robert Emerson and the sworn deposition testimony of Martin Winters.

coverage for the claims arising out of the fire, he declined to answer, invoking his right to remain silent under the Fifth Amendment.

On January 15, 2009, Chubb National Insurance Company, as subrogor to the Emersons' rights and claims arising out of the fire, filed suit against the Defendant, seeking $871,069.73 in damages for the amount paid to the Emersons under their insurance policy. After informal discovery revealed that Federal Insurance Company ("Federal") held subrogation rights, the complaint was amended to substitute Federal as plaintiff.

In the amended complaint, Federal asserted both negligence and breach of contract as alternative theories of recovery against the Defendant. Federal contended that the Defendant's contract with the Emersons included an implied obligation to complete the roofing work "skillfully, carefully, diligently, and in a workmanlike manner." Federal claimed that the Defendant was liable for the fire damages because the Emersons never released him from his contractual duties. In response, the Defendant filed a motion for summary judgment, alleging that Federal "ha[d] sued the wrong party." Because the Defendant did not participate in the repair work of September 26, 2007, had subcontracted the work out to Jacobs, and was neither at the job site nor supervised Jacobs' work, he denied liability.

The trial court granted the Defendant's motion for summary judgment on both the negligence and breach of contract claims. As to the negligence claim, the trial court held that the Defendant could not be liable for the negligent acts of a subcontractor absent evidence that he was negligent in hiring the subcontractor or in the supervision of the work performed. The trial court ruled that recovery under a theory of contract was not available because damages were not foreseeable.

The Court of Appeals reversed, holding as follows:

[D]efendant had a non-delegable duty to see that the work he was contractually obligated to perform was done in a careful, skillful, and workmanlike manner. The summary judgment was not appropriate, based solely on the fact that the work in question was performed by a sub-contractor. . . . [S]ince [D]efendant ultimately had the duty to make sure that the work on the roof was done in a careful, skillful, and workmanlike manner, and it was shown that it was not, summary judgment was not appropriate.

Fed. Ins. Co. v. Winters, No. E2009-02065-COA-R3-CV, 2010 WL 4065609, at *5 (Tenn. Ct. App. Oct. 18, 2010).

We granted the Defendant's application for permission to appeal to determine whether the Defendant, as the contractor, had the implied duty under contract to perform the roofing services carefully, skillfully, diligently, and in a workmanlike manner, and if so, whether this duty was delegable to a subcontractor. Federal no longer seeks recovery against the Defendant based upon a theory of negligence.

## Standard of Review

Contractual interpretation is a matter of law. Hamblen Cnty. v. City of Morristown, 656 S.W.2d 331, 335-36 (Tenn. 1983). Likewise, our review of a trial court's entry of summary judgment is a question of law. Hunter v. Brown, 955 S.W.2d 49, 50-51 (Tenn. 1997). In consequence, appellate courts attach no presumption of correctness to the decision of the trial court and must review the record de novo to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. In re Estate of Davis, 308 S.W.3d 832, 837 (Tenn. 2010). A court should grant a party's motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 5 (Tenn. 2008); Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993). The movant bears the ultimate burden of persuading the court "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." Byrd, 847 S.W.2d at 215. If the motion for summary judgment is properly supported, then the burden shifts to the non-moving party to show that a genuine issue of material fact exists. Id. At the summary judgment phase, "it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact." Martin v. Norfolk S. Ry. Co., 271 S.W.3d 76, 87 (Tenn. 2008) (citing Byrd, 847 S.W.2d at 211).

## Analysis
## I. Implied Duty to Perform Skillfully, Carefully, Diligently, and in a Workmanlike Manner

Since neither Federal nor the Defendant dispute the existence of a contract, the initial question is whether the Defendant breached its terms, express or implied. Federal contends that the Defendant breached its implied responsibility, while the Defendant argues that no such implied responsibility existed on his part.

In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach. ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). In addition to the explicit terms, contracts may be accompanied by implied duties, which can result in a breach. See, e.g., Aetna Cas. & Sur. Co. v. Gilreath, 625 S.W.2d 269, 275 (Tenn. 1981) (explaining that the absence of an express contractual duty did not preclude the existence of an implied duty); German v. Ford, 300 S.W.3d 692, 708-09 (Tenn.

-4-

Ct. App. 2009) (imposing an implied duty of good faith and fair dealing).  Recently, in Bowling v. Jones, 300 S.W.3d 288, 291 (Tenn. Ct. App. 2008), the Court of Appeals made the following observation regarding the implied duties encompassed in construction contracts:

> Once a builder undertakes a construction contract, the common law imposes upon him or her a duty to perform the work in a workmanlike manner, and there is an implied agreement that the building or work performed will be sufficient for the particular purpose desired or to accomplish a certain result.  Thus, failure to perform a building contract in a workmanlike manner constitutes a breach of the contract.

(quoting 13 Am. Jur. 2d Building and Construction Contracts § 10 (2000)).  Other authorities recognize this implied duty as not only applicable to construction contracts, but to all service contracts.  See 17A Am. Jur. 2d Contracts § 612 (2011) ("[T]here is implied in every contract for work or services a duty to perform skillfully, carefully, diligently, and in a workmanlike manner.");  23 Samuel Williston, Williston on Contracts § 63.25 (4th ed. 2011) ("Accompanying every contract is a common-law duty to perform with care, skill, reasonable expediency . . . the thing agreed to be done. . . . Whether a contract for services is breached depends upon whether the service provider exercises or fails to exercise that degree of skill and knowledge normally possessed by those members of the trade . . . .").

Cases from numerous jurisdictions support the principle that service contracts are accompanied by an implied obligation to perform the service skillfully, carefully, diligently, and in a workmanlike manner.  See, e.g., Reliable Elec. Co. v. Clinton Campbell Contractor, Inc., 459 P.2d 98, 101 (Ariz. Ct. App. 1969) (explaining that someone who undertakes a service must perform the service in a "good workmanlike manner and in a manner befitting a skilled contractor").  For example, the Supreme Court of Arkansas, in Graham Constr. Co. v. Earl, 208 S.W.3d 106, 110 (Ark. 2005), ruled that a contractor "impliedly warrants that the work he undertakes will be done in a good and workmanlike manner and will be reasonably fit for the intended purpose."  Other state courts have similarly ruled.  Ferrigno v. Pep Boys, 818 A.2d 903, 904 (Conn. Super. Ct. 2003) ("It is an implied condition of every service contract that the service will be performed in a workmanlike manner.");  Hoffman v. Simplot Aviation, Inc., 539 P.2d 584, 588 (Idaho 1975) (opining that contracts for personal services contain an implied warranty to be carried out in a workmanlike manner);  In re Talbott's Estate, 337 P.2d 986, 989 (Kan. 1959) ("[I]t is generally recognized that when a party binds himself by contract to . . . perform a service . . . there is an implied agreement or warranty, which the law annexes to the contract, that he will do a workmanlike job and will use reasonable and appropriate care and skill." (citations omitted));  Aqua Pool Renovations, Inc. v. Paradise Manor Cmty. Club, Inc., 04-119 (La. App. 5 Cir. 7/27/04); 880 So. 2d 875,

884 ("Louisiana law implies that a contractor will complete the work in a good and workmanlike manner and that it will be free from defects in workmanship or materials."); Marcus v. Lee S. Wilbur & Co., 588 A.2d 757, 759 (Me. 1991) ("One of the implied terms of every repair contract is an undertaking to perform the work in a reasonably skillful and workmanlike manner . . . ." (internal quotation marks omitted)); Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003) ("'When a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it.'" (quoting Abrams v. Factory Mut. Liab. Ins. Co., 10 N.E.2d 82, 83 (Mass. 1937))); Sveum v. J. Mess Plumbing, Inc., 965 S.W.2d 924, 926 (Mo. Ct. App. 1998) (explaining that all contracts carry an implicit requirement to perform the terms of the contract "in a skillful and workmanlike manner"); Mascarenas v. Jaramillo, 806 P.2d 59, 61 (N.M. 1991) (recognizing an implied warranty to perform work in a skilled and workmanlike fashion); McKinley v. Brandt Constr., Inc., 168 Ohio App. 3d 214, 2006-Ohio-3290, 859 N.E.2d 572, 574 ("Any contract to perform work imposes . . . the duty to perform the work in a workmanlike manner."); McCool v. Hoover Equip. Co., 415 P.2d 954, 958 (Okla. 1966); Davis v. New England Pest Control Co., 576 A.2d 1240, 1242 (R.I. 1990) ("[T]here is implied in every contract for work or services a duty to perform it skillfully, carefully, and diligently and in a workmanlike manner . . . ."); Hutson v. Cummins Carolinas, Inc., 314 S.E.2d 19, 23 (S.C. Ct. App. 1984) ("[W]here a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work . . . shall be of proper workmanship and reasonably fitted for its intended purpose." ); see also Waggoner v. Midwestern Dev., Inc., 154 N.W.2d 803, 807 (S.D. 1967) ("[W]here a person holds himself out as especially qualified to perform work of a particular character there is an implied warranty that the work shall be done in a reasonably good and workmanlike manner . . . ."); Walker & Assocs. Surveying, Inc. v. Austin, 301 S.W.3d 909, 913, 914 (Tex. Ct. App. 2009) ("The implied warranty of good and workmanlike manner provides that a service will be performed in a skillful and workmanlike manner. . . . [E]ven if the parties do not agree on a specific standard, the implied warranty of good workmanship serves as a gap-filler or default warranty." (internal quotation marks omitted)).

Based on the weight of authority on this subject, a United States District Court, interpreting Tennessee law, recently observed that "[a]s a general rule, all contracts for services contain an implied duty to perform services skillfully, carefully, diligently, and in a workmanlike manner." Price v. Home Depot U.S.A., Inc., No. 06-2216, 2008 WL 2910610, at *5 (W.D. Tenn. Mar. 6, 2008). American Jurisprudence recognizes this implied duty as the "general rule." 17A Am. Jur. 2d Contracts § 612 (2011).

Some of these cases cited as authority refer to this implied responsibility as a duty, while others refer to it as a warranty. The concepts of duty and warranty are, of course,

separate and distinct precepts under law, in that a duty is defined as "a legal obligation that is owed or due to another," Black's Law Dictionary 580 (9th ed. 2009), whereas a warranty qualifies as a "covenant." Id. at 1725. Nevertheless, these cases lend support for the general principle that individuals or business entities must answer for any deficiencies in the performance of their services.

Here, the Plaintiff has alleged that the "[D]efendant breached its contractual duties by failing to complete the contract work . . . skillfully, carefully, diligently, [and] in a workmanlike manner . . . ." (Emphasis added). The Plaintiff does not seek relief for a breach of warranty, and instead, has asserted that the contract for roofing services included an implied duty to perform under this standard. In our view, the contract placed upon the Defendant the implied duty to skillfully, carefully, and diligently install and repair the Emersons' roof in a workmanlike manner.

## II. Non-delegable Duty to Perform Skillfully, Carefully, Diligently, and in a Workmanlike Manner

The question that remains is whether the duty of the Defendant to replace the roof skillfully, carefully, diligently, and in a workmanlike manner could be delegated to a subcontractor. That is, may a contractor who has such a duty escape liability by subcontracting with a third party who breaches these implied responsibilities? This Court has not previously considered whether utilizing an independent contractor in performing a contract for services can absolve the contracting party from liability under the contract.

The Restatement (Second) of Contracts specifically addresses this issue, explaining that "neither delegation of performance nor a contract to assume the duty [under a contract] . . . discharges any duty or liability of the delegating obligor." Restatement (Second) of Contracts § 318(3) (1981). Another treatise on the subject observes that a party cannot escape a contractual obligation or defined legal duty to an injured party by hiring an independent contractor to perform the contracted-for services. 41 Am. Jur. 2d Independent Contractors § 28 (2011) ("A person who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the contractor except where the employer owes a contractual or defined legal duty to the injured party in the performance of the work.") (emphasis added).

In Bowling v. Jones, the Court of Appeals dealt with facts similar to those in the case before us. Jones Brothers Construction, a contractor, agreed to construct a residence for the property owners. Bowling, 300 S.W.3d at 289. Jones Brothers then hired a number of independent contractors to carry out much of the work. Id. at 295. Near the completion of the construction, the property owners discovered defects in the house and sued, claiming a breach of the implied warranty to construct the house in a workmanlike manner. Id. at 291.

After an adverse ruling in the trial court, Jones Brothers appealed, claiming for the first time that the company could not be held liable for the defective workmanship of their independent subcontractors. Id. at 295. While acknowledging that the issue had not been raised at the trial court level and thus, would not be "entertained on appeal," the Court of Appeals nevertheless made the following observation:

> Apparently, the Jones brothers argue that if there were problems with the work performed by the individuals they employed, the [owners'] recourse is to sue those individuals, and the Jones brothers themselves are not contractually liable. We find no merit in this argument. The Jones brothers had a contractual duty to construct the house to completion and to perform the construction in a workmanlike manner. Their unilateral delegation of work to third parties did not absolve them of this duty.

Id. Although qualifying as dicta, the language employed by the Court of Appeals is representative of the rulings in other states. For example, in Brooks v. Hayes, 395 N.W.2d 167, 169 (Wis. 1986), a subcontractor improperly installed a component part to a fireplace in the construction of a house, resulting in a fire that caused substantial damage. The Supreme Court of Wisconsin held that by entering the contract for services, the contractor undertook the responsibility to perform the work with skill and due care and could not escape liability based upon the delegation of the performance of services to subcontractors: "The hornbook principle of contract law is that the delegation of the performance of a contract does not, unless the obligee agrees otherwise, discharge the liability of the delegating obligor . . . for breach of contract." Id. at 170.

The Supreme Court of Washington reached a similar result in White Pass Co. v. St. John, 427 P.2d 398 (Wash. 1967). In that case, a contractor, after agreeing to renovate a ski lodge, hired a subcontractor, who used a flammable material on the floors and caused a fire. Id. at 399. The court held that the contractor had an implied duty to perform the work with due care and ruled that he was responsible for the actions of a subcontractor who had breached this duty. Id. at 401. Relying on persuasive authority, the court further stated that a contractor who "undertakes to do some particular thing . . . cannot, by employing an independent contractor, avoid responsibility for an injury resulting from the nonperformance of any duty or duties which, under the express terms of the agreement, or by implication of law, are assumed by the undertaker." Id. (quoting Liability of Employer for Acts or Omissions of Independent Contractor in Respect of Positive Duties or Former Arising from or Incidental to Contractual Relationships, 29 A.L.R. 736 (1924)); see also Bd. of Regents of Univ. of Wash. v. Frederick & Nelson, 579 P.2d 346, 348 (Wash. 1978) (relying on White Pass to hold a contractor liable for damages resulting from a fire caused by subcontractors who were performing the services specified in the contract).

Moreover, the Georgia Court of Appeals, in Hudgins v. Bacon, 321 S.E.2d 359, 362, 365-67 (Ga. Ct. App. 1984), held that a general contractor was bound by his obligation to build the house in a fit and workmanlike manner, even though a subcontractor caused the defects in construction. The Georgia court explained that

> the basis of liability is the [defendant] holding himself out as having the ability and expertise . . . to build a fit and proper dwelling. It would be too easy for a builder-seller to avoid liability by hiring inexperienced crews, providing little or no supervision, and then claiming the culprit of any negligence was an independent contractor. The contract . . . with its attendant obligations, is between the buyer and builder, not the buyer and any independent contractor.

Id. at 366 (citations omitted).

To be clear, this principle does not mean that the performance of service contracts cannot be delegated. Generally, a contractor may delegate the performance of the contract, in whole or in part, to a third party. Restatement (Second) of Contracts § 318(1) (1981). The delegation of performance, however, does not relieve the contractor from the duties implicit in the original contract. Loftus v. Am. Realty Co., 334 N.W.2d 366, 367 (Iowa Ct. App. 1983). Stated definitively, "'[o]ne who contracts to perform an undertaking is liable to his promise[e] for the [acts] of an independent contractor to whom he delegates performance.'" Id. (quoting Capitol Chevrolet Co. v. Lawrence Warehouse Co., 227 F.2d 169, 173 (9th Cir. 1955)).[2]

Neither does the imposition of this non-delegable duty upon contractors vitiate the common law rule that employers are generally not liable for the negligence of their independent contractors. See McHarge v. M.M. Newcomer & Co., 100 S.W. 700, 702 (Tenn. 1907). Because this non-delegable duty arises from the contract entered into by the contractor, the rule immunizing a contractor from the acts of an independent subcontractor has no application to these separate contractual responsibilities. See Capitol Chevrolet, 227 F.2d at 173; Harold A. Newman Co. v. Nero, 107 Cal. Rptr. 464, 468 (Cal. Ct. App. 1973).

Here, the Emersons contracted with the Defendant for the installation of a roof. When it became apparent that the new roof leaked and required repairs, the Emersons contacted the Defendant, who agreed to fix the problems. Without the knowledge of the Emersons, the Defendant hired a subcontractor to perform the repair work, whose use of a propane torch

---

[2] If, of course, the Emersons had released the Defendant from his duties under the contract and agreed that he was not liable for the acts of a subcontractor, the Defendant would not be contractually liable for the subcontractor's acts in repairing the roof.

in repairing the roof resulted in a fire that caused substantial damage. Because the Defendant had the implied duty under contract to install the roof carefully, skillfully, diligently, and in a workmanlike manner, and, further, because the delegation of the responsibility to perform the services did not operate to release him from liability, the Defendant, based on his contract with the Emersons, may be held liable for the damages caused by the acts of Jacobs, the subcontractor. Based upon the non-delegable nature of the implied duty, the trial court erred by granting the Defendant's motion for summary judgment.

## Conclusion

The Defendant had an implied duty to perform the services required by his contract with the Emersons in a careful, skillful, diligent, and workmanlike manner. Although lawfully delegating his responsibility to install a proper roof, first to Monk and then to Jacobs, the Defendant is nevertheless liable for any breach of his implied duty. The judgment of the Court of Appeals is, therefore, affirmed, and the case is remanded for trial. Costs are assessed against the Defendant, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE