IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 1, 2025 Session

## XINGKUI GUO v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission
No. 0546-GL-10-0503362-001      James A. Haltom, Commissioner**

————————————————————

### No. M2024-00819-COA-R3-CV

————————————————————

Professor appeals from the Tennessee Claims Commission's Rule 41.02(2) involuntary dismissal of his breach of contract action against Tennessee State University. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Tennessee Claims
Commission Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and JEFFREY USMAN, JJ., joined.

Jason D. Holleman, Nashville, Tennessee, for the appellant, Xingkui Guo.

Jonathan Skrmetti, Attorney General and Reporter, J. Matthew Rice, Solicitor General, Melissa Ann Brodhag, Senior Assistant Attorney General, Camille DiRosa Vulcano, and E. Ashley Carter, for the appellee, State of Tennessee.

## OPINION

### I.      BACKGROUND

The appellant, Xingkui Guo ("Claimant"), has served as an art professor for Tennessee State University ("TSU") since 2003. His focus is photography and graphic design. Claimant earned a masters degree. In December 2021, he submitted a claim for damages against the appellee the State of Tennessee ("Defendant"), acting by and through TSU, to the Tennessee Division of Claims Administration and Risk Management. The claim was transferred to the Tennessee Claims Commission. His February 28, 2022 complaint asserted claims for unjust enrichment and breach of contract based on the

following alleged facts:

TSU's Division of Academic Affairs publishes an Operating Manual each year which provides the most current procedures to guide day-to-day operations of academic units and faculty at the University. The [2020-2021 Operating Manual] states, "Standard faculty **workloads** are defined by the TSUBT as 15 credit hours or the equivalent" (emphasis original). TSUBT stands for the Tennessee State University Board of Trustees. Faculty are allowed to apply for three credit hours of "released time to pursue research" every semester, per page 68 of the [Operating Manual]. [Claimant] was approved for three credit hours of released time to pursue research every semester since 2010, with the exception of the Fall 2016 semester when he was out on leave. If a faculty member is assigned more than 15 credit hours in a semester, they are to apply for "overload payment." Standard 15 credit hour assignments include the three credit hours approved for research. Overload payments for Professors are $700 per credit hour over the standard 15 credit hour workload. However, TSU makes an exception per page 69, section 13 of the [Operating Manual], which reads, "[o]verloads may not be processed if a faculty member has a class with low enrollments that should have been cancelled." Thus, a class that "should have been cancelled," but was not, seemingly cannot qualify for an overload payment. 20 students are needed to enroll in an undergraduate 100 or 200 level class to meet the minimum enrollment [and] 15 students are needed to enroll in an undergraduate 300 or 400 level class to meet the minimum enrollment. Under that same policy, "[i]f an insufficient number of students register for a given class, the class **must be canceled** unless with the approval of the dean of the college/school concerned and the AVP" (emphasis added). AVP stands for Associate Vice President of Academic Affairs. [Claimant] has been repeatedly denied overload payments because some classes he taught did not meet the minimum enrollment level [but TSU never cancelled those classes].

Claimant further alleged that he was assigned eighteen teaching hours in the Fall 2015, Spring 2019, Fall 2019, Spring 2020, and Fall 2020 semesters, and was assigned twenty-one teaching hours in the Spring 2016, Spring 2017, Fall 2017, Spring 2018, and Spring 2021 semesters. Claimant inquired about overload payments and the requisite paperwork but was told by the Department Chair that no money was available to pay him. In 2021, he complained about his schedule and lack of overload payments to the Interim Dean of the College of Liberal Arts, Dr. Samantha Morgan-Curtis, who advised Claimant that he was not eligible for overload payments because some of his classes did not have the requisite minimum enrollment. Dr. Morgan-Curtis changed Claimant's Fall 2021 schedule at his request such that he was teaching fewer credit hours and no longer teaching an overload schedule. Claimant alleged that TSU failed to follow its policy and improperly

denied overload payments due for forty-five extra credit hours taught over the previous years. He sought $31,500 in damages.

In its answer, Defendant stated that Claimant never had been assigned an overload schedule and denied that he was eligible for overload payments. Defendant responded, "Claimant's scheduled hours do not exceed the overload threshold as those hours are not standard. Claimant has taught multiple classes in one combined course at one time to maintain minimum enrollment; the overload policy addresses this type of adjustment."

The Claims Commission entered an agreed order dismissing the unjust enrichment claim. On August 3, 2023, the Claims Commission denied the parties' cross motions for summary judgment, finding that genuine issues of material fact remained for trial. The case proceeded to a March 26, 2024 trial on the breach of contract claim. Dr. Samantha Morgan-Curtis and Claimant testified. Dr. Morgan-Curtis explained that TSU's faculty workload forms are filled out by the administrative assistant in the particular department, either approved or rejected by the Dean, and then approved or rejected by the Vice President of Academic Affairs. When determining whether a course should be cancelled due to low enrollment, a faculty member discusses this with the department chair who speaks to the Dean who, in turn, speaks to the Vice President of Academic Affairs. Dr. Morgan-Curtis further explained that stacked courses are studio courses, as opposed to lecture courses, with basically the same content that are taught during the same course period, by the same professor, in the same area or classroom. TSU does not have a specific written policy about stacked courses. The following exhibits were entered into evidence: Portions of TSU's Division of Academic Affairs Operating Manuals from the years 2017 to 2018, 2018 to 2019, and 2020 to 2021; the Fall 2015 TSU Determining Faculty Workloads Policy 02.07; and Claimant's faculty workload from the Spring 2017 and Fall 2017 semesters.

Claimant's Spring 2017 faculty workload form showed that he was assigned to teach six courses worth three credit hours each. Of those courses, two of them, Production and Advanced Graphic Design, were scheduled simultaneously on Tuesday/Thursday from 8:00 a.m. to 11:00 a.m., and had an enrollment of six and seven students each, respectively. Likewise, Photography and Advanced Photography were scheduled simultaneously on Monday/Wednesday and had an enrollment of twelve and two students, respectively. Upon questioning by Claimant's counsel, Dr. Morgan-Curtis explained:

Q. So, again, it—so there's 18 total hours, correct?

A. There are 18 student credit hours—

Q. Okay.

A. –listed.

- 3 -

Q.  And when you look below at total—at the category that says total converted hours, what does that mean?

A.  That means that because the—there are two sets of classes that were actually offered in the same classrooms at the same times, they're stacked courses and so the converted hours are 12.  So effectively in terms of workload hours, 12.

Q.  So specifically with regards to this workload, it's—because there's a—it looks like a Tuesday/Thursday class from 8:00 'til 11:00, but there's two that the [Claimant] taught at the same time; is that correct, production and advanced graphic design?

A.  Right.  One is a beginning class.  And—and the—it's the production of graphic design and the second one is an advanced course.

Dr. Morgan-Curtis was not asked about Claimant's Fall 2017 faculty workload form.  The form indicates that Claimant taught two sets of stacked courses: Photography (ten students) and Advanced Photography (two students) on Monday/Wednesday from 8:00 to 11:00, and Advanced Graphic Design (three students) and Production (three students) on Monday/Wednesday from 11:10 to 2:10.  In Fall 2017, Claimant's total converted teaching hours from six courses equaled twelve.

At the conclusion of Claimant's case-in-chief, Defendant moved for a Rule 41.02(2) involuntary dismissal.  Claimant's counsel stipulated that any claim stemming from the Fall 2015 semester or prior was barred under the statute of limitations.  The motion was granted.  By order entered May 3, 2024, the Claims Commission "weighed and evaluated the actual evidence presented during Claimant's case" and determined that it "did not establish breach of a written contract by a preponderance of the evidence," thus warranting the case's dismissal under Rule 41.02(2).  Specifically, the Claims Commission found that Claimant had failed to establish the existence of a written contract between the parties because there was insufficient testimony on this element of the breach of contract claim.  The Claims Commission further found that, assuming such a contract existed, Claimant failed to establish that TSU had breached it because he had not proven that he taught more than the standard fifteen credit hours in any given semester.  Claimant appealed.

## II.    ISSUE

We restate the issue pertinent to this appeal as follows:

Whether the Claims Commission erred in dismissing Claimant's breach of contract

- 4 -

claim under Rule 41.02(2) based on its findings that he failed to establish, by a preponderance of the evidence, the existence of a written contract or the breach of any such contract.

## III.    STANDARD OF REVIEW

Pursuant to Tennessee Code Annotated section 9-8-403(a)(1), any appeal from a decision of the Claims Commission to this Court is made pursuant to the Tennessee Rules of Appellate Procedure.  Under Tennessee Rule of Appellate Procedure 13(d), we review this case de novo upon the record with a presumption of correctness for the Claims Commission's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d).  However, this presumption does not extend to conclusions of law. We review the Claims Commission's legal conclusions de novo with no presumption of correctness.  *Turner v. State*, 184 S.W.3d 701, 704 (Tenn. Ct. App. 2005).

"When reviewing a trial court's grant of a Tenn. R. Civ. P. 41.02(2) motion to dismiss, the reviewing court must affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or the trial court's decision is based on an error of law that affects the outcome of the case." *Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013) (citations omitted).

## IV.    DISCUSSION

This appeal stems from the Claims Commission's grant of Defendant's motion for involuntary dismissal at the close of Claimant's proof on his breach of contract claim. Tennessee Rule of Civil Procedure 41.02(2) provides:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.  The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief.  The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.  If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusion of law and direct the entry of the appropriate judgment.

Tenn. R. Civ. P. 41.02(2).  As our Supreme Court has explained,

> A complaint may be dismissed pursuant to Tenn. R. Civ. P. 41.02(2) if, based on the law and the evidence, the plaintiff failed to demonstrate a right to the relief sought. A trial court entertaining a motion for involuntary dismissal under Tenn. R. Civ. P. 41.02(2) must impartially weigh and evaluate the evidence just as it would after all the parties had presented their evidence. The court may dismiss the plaintiff's claim if the plaintiff has failed to make out a prima facie case.

*Shore*, 411 S.W.3d at 413–14 (Tenn. 2013) (internal citations omitted); *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (under Rule 41.02(2), the court "may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence.").

By statute, State employees such as Claimant are permitted to assert breach of contract claims against the State. *See* Tenn. Code Ann. § 9-8-307(a)(1)(L). "In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). When bringing a breach of contract action against the State, it is the claimant's burden to prove the existence of a "*written* contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract." Tenn. Code Ann. § 9-8-307(a)(1)(L) (emphasis added).[1]

At trial, Claimant did not enter a written contract between himself and the State into evidence. On appeal, Claimant notes that the document entitled "Tennessee State University Notice of Tenure-Track Appointment and Agreement of Employment for Faculty" dated July 6, 2004, is a signed, written contract.[2] He argues that because the document states, "[t]his appointment is made subject to the laws of the State of Tennessee, the requirements and policies of the Tennessee Board of Regents and the requirements and policies of Tennessee State University," it incorporates TSU's faculty workloads policy— a 2015 excerpt of which was admitted at trial—into the terms of the agreement between the parties. This argument is tenuous for a few reasons. The language of the 2004 employment contract does not address faculty workloads, let alone workloads for the relevant semesters at issue in this action. Nor does it expressly incorporate a faculty

---

[1] *See Stewart v. State*, 33 S.W.3d 785, 790 (Tenn. 2000) ("While the Claims Commission has exclusive jurisdiction to hear claims arising against the state . . . this jurisdiction is limited only to those claims specified in Tennessee Code Annotated section 9-8-307(a). If a claim falls outside of the categories specified in section 9-8-307(a), then the state retains its immunity from suit, and a claimant may not seek relief from the state.").

[2] Defendant offered Claimant's July 6, 2004 employment contract in support of its motion for summary judgment earlier in the proceedings.

workload policy. By contrast, the language of the 2004 employment contract expressly "incorporate[s] by reference as if fully set forth herein" Policy 05:02:03:10 on academic freedom, responsibility, and tenure. Claimant entered the Fall 2015 TSU faculty workloads policy 02.07 as an exhibit at trial, but later stipulated that a breach of contract claim from the Fall 2015 semester or prior was barred under the statute of limitations. The Fall 2015 workloads policy contains "*guidelines* [which] are designed to permit the department chair the highest practicable degree of flexibility in making faculty workload assignments" (emphasis added). Likewise, the proffered TSU Division of Academic Affairs Operating Manuals from the years 2017 to 2018, 2018 to 2019, and 2020 to 2021 all state, "[t]he Division of Academic Affairs will be reviewing workloads, released time, adjunct assignments, and requests for overloads using the following *guidelines*. Standard faculty workloads are defined . . . as 15 credit hours or the equivalent" (emphasis added).

Upon review, we hold that, on their face, the guidelines in the aforementioned policies do not show contractual intent so as to form an enforceable, written, executed contract under section 9-8-307(a)(1)(L). *See, e.g.*, *Smith v. Morris*, 778 S.W.2d 857, 858 (Tenn. Ct. App. 1988) (observing that for an employee handbook to form part of a contract, "the specific language of the handbook must show contractual intent"). The limited testimony adduced at trial did not illuminate the parties' intent to be contractually bound by the guidelines in the aforementioned policies or whether such policies were integrated into Claimant's employment contract. As such, Claimant failed to make out a prima facie case for breach of contract by a preponderance of the evidence.

Assuming *arguendo* that the guidelines in the policies formed a written contract, the evidence does not preponderate against the Claims Commission's finding that Claimant failed to show "any specific page, paragraph, or line that was breached." As the Claims Commission noted, the only documentary evidence admitted at trial concerning Claimant's teaching hours during the ten semesters identified in his complaint were his Spring 2017 and Fall 2017 faculty workload forms. Claimant testified that he taught forty-two hours without pay. Claimant did not explain how either document amounted to proof of an overload teaching schedule or how his teaching schedule in any relevant semester was not the equivalent of fifteen credit hours. Dr. Morgan-Curtis's testimony about the simultaneous teaching of low enrollment studio courses and converted hours went unrebutted. With all of the foregoing considerations in mind, we affirm the decision of the Claims Commission dismissing the breach of contract claim under Rule 41.02(2).

## V. CONCLUSION

We affirm the May 3, 2024 order of the Claims Commission. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Xingkui Guo.

_____
JOHN W. McCLARTY, JUDGE