IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 14, 2012 Session

## THE TOWN OF PEGRAM v. CORNERSTONE DEVELOPMENT, LLC ET AL.

**Appeal from the Chancery Court for Cheatham County**
**No. 12946     Robert E. Burch, Judge**

---

**No. M2011-01536-COA-R3-CV - Filed June 12, 2012**

---

Town of Pegram appeals from the trial court's decision awarding it no damages in its claims against Cornerstone Development, LLC, the company which constructed the Town's city hall and surrounding parking lot. Pegram also appeals the trial court's summary dismissal of National Grange Mutual Insurance Company, which provided the performance bond assuring Cornerstone's performance. We affirm the trial court's findings in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Lawrence B. Hammet II, Trajan H. Carney IV, and Shannon Chaney Smith, Nashville, Tennessee for the appellant, Town of Pegram.

Scott Cameron Williams and Karen P. Stevenson, Nashville, Tennessee, for the appellees, Cornerstone Development LLC, Andrew E. Minge, and Joseph W. Minge.

John M. Gillum and Jarrod W. Stone, Nashville, Tennessee, for the appellee, National Grange Insurance Company.

**OPINION**

The Town of Pegram filed this action against Cornerstone Development, LLC, and its surety, National Grange Mutual Insurance Company, for claims of breach of contract,

intentional concealment, and negligent concealment alleging faulty construction of a parking lot surrounding Pegram's new city hall.[1]

Pegram entered into a contract with Cornerstone for the construction of its new city hall and the surrounding parking lot in August 2001. Prior to hiring Cornerstone, Pegram hired Bowers Excavating in 2000 to perform excavating and grading work and Geosciences Design Group, LLC, to perform a geotechnical investigation of the site in 2001. The contract with Cornerstone required the parking lot to be constructed with 8 inches of crushed stone base, 2 inches of asphaltic concrete binder, a tack coat, and one and one-half inches of asphaltic concrete wearing surface. The contract specifications required any fill used to be soil materials classified as "satisfactory soil," which was defined by Part 2.1 of the contract specifications. As part of the contract, National Grange Mutual Insurance Company executed a Performance Bond assuring Cornerstone's completion of the contract.

Prior to commencement of construction, Pegram discovered that the site plan was drawn to an incorrect scale. A new site plan was prepared and a change order was signed. The change order required additional fill material. Construction was completed in November 2002 and Cornerstone was paid in full.

Subsequently, signs of distress appeared in the parking lot in the form of large cracks, holes, and depressions. Pegram notified Cornerstone of the problems, and in June 2004, Cornerstone made repairs in two areas of the parking lot; however, Pegram continued to be dissatisfied with the parking lot following the repairs.

At the direction of the mayor and city council, Pegram's Town Engineer, Bradley Bivens,[2] performed an investigation and hired a geotechnical firm, Qore Property Science to perform a geotechnical exploration and provide a report. In Fall 2004, Qore provided a report, which included recommendations for repairs. In its report, Qore stated that groundwater seepage appeared to be a contributing factor to the deterioration of the pavement. Qore also stated that the soil collected from the subsurface was marginally firm, and in most cases soft, and that subgrade failure was the cause of some of the pavement problems. Qore additionally found that the crushed stone base in some areas appeared to be less than the 8 inches required by contract specifications, averaging less than 6 inches overall. In order to address these problems, Qore recommended that an underdrain system

---

[1]Greg Smith, the project architect, and Merville & Howe Engineering were defendants. Pegram settled their claims against these parties, they were dismissed from the suit, and are not parties to this appeal.

[2]Bradley Bivens is a civil engineer employed by Neel-Schaffer Engineering, Inc.

be installed to remove groundwater; it also recommended the removal, by undercutting the substantially deteriorated areas of pavement, of weak or soft subgrade materials.

After reviewing the report prepared by Qore, Mr. Bivens prepared his own report concerning the parking lot deterioration, which summarized and interpreted Qore's findings, stating that the test bores performed by Qore indicated that the subsurface was constructed out of unsatisfactory soil materials and that the subgrade failure might be the cause of some of the pavement problems in the parking lot.

In August 2005, Pegram contracted with Sessions Sealing & Maintenance Company to perform the repairs recommended in the reports by Mr. Bivens and Qore. Sessions installed the underdrains and repaired the failing area of pavement in front of the fire hall. During the excavations, large rocks were discovered in the subgrade. Additionally, construction debris including brick, wood, pallets, and other items were found.

On February 14, 2006, Pegram notified Cornerstone of continuing problems with the parking lot and demanded it undertake corrective work. On that same day, Pegram sent a letter to National Grange notifying it of the issues with the parking lot. On February 17, 2006, National Grange responded with a letter stating that it would investigate the claim. Further correspondence occurred between Pegram and National Grange. In one letter, National Grange informed Pegram that it would send a consultant to investigate the claim. On April 28, 2006, Pegram notified National Grange that it had not been contacted by a consultant and that it intended to file suit unless National Grange cured Cornerstone's default.

On May 8, 2006, Pegram commenced this action asserting claims against Cornerstone for breach of contract, intentional concealment, and negligent concealment for its failure to adhere to the contract specifications. Pegram alleged that Cornerstone used "improper and substandard materials in the construction of the subgrade," buried construction trash and debris in the subgrade area, failed to construct the aggregate base as required, and failed to place the asphalt concrete surface and binder in uniform thickness. Pegram also asserted that Cornerstone failed to take the necessary efforts to remedy and cure the defective work. Pegram also asserted a claim against National Grange under the Performance Bond based upon Cornerstone's alleged breach.

National Grange answered and filed a motion for summary judgment claiming that Pegram had failed to satisfy the conditions precedent to performance under the Performance Bond by requesting a conference with National Grange and that Pegram failed to file suit

within the contractual limitation of two years after Cornerstone ceased work. On November 18, 2008, the trial court granted summary judgment to National Grange.[3]

A bench trial occurred on March 30 and 31, 2011 and April 1, 2011, on the claims against Cornerstone for breach of contract, intentional concealment, and negligent concealment. Following the trial, the court found that Pegram did not establish by a preponderance of the evidence that the fill soil used in the subgrade was unsatisfactory soil as defined and prohibited by the contract. The court found that Pegram did establish by a preponderance of the evidence that the crushed stone base was not installed to the correct thickness and was less than that required by the contract specifications; however, the court held that this was not a material breach because it did not cause the failure of the pavement in the parking lot. The trial court found that Cornerstone did breach the contract by disposing of construction debris in the subgrade, which was in violation of the contract; however, the court awarded no damages on this issue finding that damages would be the cost to repair and that Pegram had failed to introduce an itemized cost of repair for removing the construction debris. Therefore, the trial court entered a judgment in favor of Cornerstone and assessed costs of the action against Pegram. Pegram filed a timely appeal.

## ISSUES

Pegram raises several issues relating to its claims against Cornerstone for breach of contract, intentional concealment, and negligent concealment. First, it contends that the trial court erred in finding that it did not prove by a preponderance of the evidence that Cornerstone used unsatisfactory soil materials in the subgrade. Second, it contends that the failure of Cornerstone to install the appropriate amount of crushed stone base constituted a material breach. Third, Pegram contends that it demonstrated Cornerstone intentionally failed to construct the parking lot to the contract specifications, including the burying of construction debris and therefore Pegram is entitled to compensatory and punitive damages. Fourth, Pegram argues that the trial court erred in assessing costs of the action against it. Lastly, Pegram appeals the summary dismissal of National Grange. We shall address the issues in turn.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of

---

[3]The trial court did not specify upon which ground summary judgment was granted.

fact, it must support another finding of fact with greater convincing effect. *Id*.; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc*., 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness, and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## I. PEGRAM'S CLAIMS AGAINST CORNERSTONE

### A. Unsatisfactory Fill

The trial court found that Pegram failed to demonstrate by a preponderance of the evidence that the fill material used in the subgrade was unsatisfactory. Pegram contends the evidence preponderates against this finding asserting that the fill material used by Cornerstone was "unsatisfactory fill" as defined by the contract specifications.

Pegram argues that it put forth unrefuted proof that there was unsatisfactory fill used in the subgrade by the investigation performed by Town Engineer Bivens and Qore. Pegram also contends that Cornerstone's expert witness, Ron Merville, who was Pegram's Town Engineer during construction of the town hall and parking lot, did not perform an investigation of the subgrade and therefore his opinion is speculative. Pegram also points to testimony by Harry Minge, the project manager for Cornerstone, who admitted that Cornerstone did not test the fill acquired from adjacent property before using it in the subgrade. Cornerstone argues that despite its failure to test the fill acquired from the adjacent property, it relied upon the geotechnical survey performed by Geosciences Group in 2001, which stated that the soil immediately adjacent to the property was satisfactory.

We have determined that the evidence does not preponderate against the trial court's factual findings that the fill soil placed in the subgrade was not unsatisfactory soil as that term is defined by the parties' contract. In the written report by Qore, which was based upon its 2004 investigation, Qore stated that the soil in the subgrade was "unsatisfactory." Bradley Bivens, Pegram's expert witness, interpreted the Qore report to state that the soil was unsatisfactory *at the time the soil was placed into the subgrade*, although the report did not expressly state such. Ron Merville, Cornerstone's expert witness, disagreed with Mr. Bivens's interpretation, stating that the soil may have become "unsatisfactory" *after construction was completed*. Mr. Merville explained by stating that groundwater, which was

observed on site during construction, could be the cause for the deterioration of the subgrade. After Mr. Merville testified concerning the Qore report, Pegram did not put forth any evidence to refute Mr. Merville's opinion that the unsatisfactory condition of the subgrade, as found by Qore in 2004, may not have existed in 2002 when construction was completed and may have occurred and been caused by groundwater after construction was completed in 2002.

Mr. Merville also testified that despite being advised not to allow fire trucks to park for long periods of time on the asphalt portion of the parking lot, Pegram did just that, a fact which Mr. Merville himself observed. Mr. Merville testified that "alligator cracks" and "rutting" in asphalt parking lots, such as the kind seen in the Town Hall parking lot, may appear to be pavement failure when, in fact, it is the result of depressions caused by heavy vehicles such as fire trucks sitting on hot asphalt for significant periods of time.

Pegram also asserted that Cornerstone did not test the fill obtained from the adjacent property before using it as fill for the subgrade, which Harry Minge, the project manager for Cornerstone acknowledged; however, Cornerstone noted that it did not test the fill obtained from the adjacent property because, as Mr. Minge explained, it relied upon the geotechnical report commissioned by Pegram and performed by Geosciences Design Group, LLC in 2001, which stated that the soil was suitable. Further, Mr. Minge stated that Cornerstone was instructed to use the soil obtained from the adjacent property by Pegram's representatives.

The record reveals that there was conflicting evidence regarding the condition of the soil when it was placed into the subgrade and the various possible causes of the pavement failure. The trial court was obviously persuaded by the testimony of Mr. Merville. Further, the trial court found that Pegram disregarded warnings that the heavy fire trucks would have a negative impact on the asphalt parking lot and the professional recommendations to use concrete as opposed to asphalt, which was less likely to deteriorate.

As noted in the standard of review set forth above, we presume that the trial court's findings of fact are correct unless the preponderance of the evidence is otherwise, Tenn. R. App. P. 13(d); *Rawlings*, 78 S.W.3d at 296, and considering the evidence in this record, we have concluded that the evidence does not preponderate against the trial court's findings and we agree with the court's conclusion based upon these findings.

### B. CRUSHED STONE BASE AND CONSTRUCTION DEBRIS

The court found that Pegram proved the crushed stone base was not installed to the thickness required by the contract, which constituted a breach of the contract; however, the

court held that this was not a material breach because the breach did not cause any damages, in that the thickness of the crushed stone base was not the cause of the problems with the parking lot.

Pegram contends this was error asserting that the failure of Cornerstone to install the correct thickness of crushed stone entitles it to an award of damages. Pegram asserts that there was no need for the trial court to determine whether the failure of Cornerstone to install the crushed stone base was a material breach because Pegram did not seek to suspend its performance under the contract. Instead, Pegram asserts that this should be treated as a partial breach and it is entitled to damages because Pegram did not receive the benefit of the bargain – installation of a crushed stone base as specified in the contract. For its part, Cornerstone insists that the trial court correctly determined that Cornerstone's breach was not material because it did not cause the failure of the pavement; thus, the trial court correctly denied damages for this breach.

We agree with Pegram that Cornerstone's failure to provide a crushed stone base as specified by the contract is a breach. The inspection by Qore, which was stipulated to by the parties, identified several areas in which the crushed stone base was less than the eight inches required by the contract. However, that finding alone, that Cornerstone failed to comply with one specification of a contract to construct an asphalt parking lot pursuant to several specifications, does not entitle Pegram to recover damages. *See Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tennessee, Inc.*, 195 S.W.3d 28, 35 (Tenn. Ct. App. 2005) ("The mere fact a party breaches a contract does not entitle the other party to an award of damages.") (citing *Great American Music Mach., Inc. v. Mid–South Record Pressing Co.*, 393 F.Supp. 877, 885 (M.D. Tenn.1975)).

In a breach of contract action, the claimant must prove the existence of an enforceable contract, a deficiency in the performance amounting to a breach, and *damages caused by the breach*. *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citing *ARC LifeMed, Inc. v. AMC–Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)) (emphasis added); *see also Moore Const. Co., Inc. v. Clarksville Dept. of Electricity*, 707 S.W.2d 1, 14 (Tenn. Ct. App. 1985) ("Tennessee law permits the recovery of damages that are the normal and foreseeable result of a breach of contract."). In this case, Pegram has proven the existence of an enforceable contract and it has proven a breach; but to recover damages, Pegram must also prove that this breach caused the problems with the parking lot. *See Filmtech v. McAnally*, No. E2011-2011-00659-COA-R3-CV, 2011 WL 6780176, at *3 (Tenn. Ct. App. Dec. 22, 2011) (holding that "the injured party must demonstrate that the failure to adhere to the contract specifications is the cause of the failures to the pavement in order to recover damages").

The necessity of proving damages to a parking lot caused by a breach of the construction contract was at issue in *Filmtech v. McAnally*, 2011 WL 6780176, at *3. The plaintiff in *Filmtech* filed suit against the contractor alleging breach of a contract to construct an asphalt parking lot.[4] The trial court found that the defendant contractor breached the contract by not performing the contracted paving work in accordance with the specifications and that the breach was the proximate cause of the damage to the pavement. *Id*. at *1. On appeal, the contractor asserted that it did not breach the contract but, if there was a breach of the contract due to a failure to meet the contract specifications for the thickness of the base stone and asphalt layers, the breach was not the cause of the pavement failure and therefore, the plaintiff was not entitled to recover any damages. *Id*. This court found that the evidence supported the findings that the contractor breached the contract. *Id*. at *3. As for the contractor's argument that its failure to meet the contract specifications for the thickness of the base stone and asphalt layers was not the cause of the pavement failure, this court rejected that argument finding there was material evidence that the failure to build the contract to specifications caused the failure to the parking lot, which would continue to occur unless the parking lot was removed and rebuilt according to the original specifications. *Id*. at *3-4.

Our review of the trial court's finding on this issue is de novo with a presumption of correctness, Tenn. R. App. P. 13(d); *Rawlings*, 78 S.W.3d at 296, and the evidence in this record does not preponderate against the trial court's determination that Pegram failed to prove that the failure to install the crushed stone base as specified in the contract was the cause of the failure to the pavement. The evidence provides no correlation between the areas where the pavement failed and where the crushed stone base was less than the contract specifications. Some areas of pavement failure occurred in areas where the crushed stone base was more than the eight inches required by the contract. While there was pavement failure occurring in areas where the crushed stone base was less than that required by the contract, the evidence in the record supports the conclusion that the pavement failure was due to the groundwater seepage and the unsatisfactory soil in the subgrade that we have already addressed.

It is also significant, as the trial court found, that Pegram ignored the warnings of the Town Engineer at the time of the construction, Mr. Merville, who advised Pegram not to park heavy fire trucks on the asphalt, only on the concrete. Mr. Merville testified this would

---

[4]The trial court referred the matter to a special master. *Filmtech*, 2011 WL 6780176, at *1. The special master found that the defendant contractor "did not perform the contracted paving work in accordance with the specifications set forth in his estimate" and that the breach of contract was the proximate cause of the damage to the pavement. *Id*. The special master determined that the solution to the pavement problems of the plaintiff was to remove the current parking lot and build another lot in accordance with the original specifications. *Id*. The trial court affirmed and adopted the findings of the special master. *Id*. at *2.

contribute to the pavement failure. We further note that the recommendations by Qore to address the problems experienced with the pavement was not the removal of the parking lot and the installation of the crushed stone base according to contract specifications, but was the installation of underdrains to address the problem of groundwater seepage, a recommendation which Pegram chose to pursue.

Based upon the foregoing analysis, we find no error with the trial court's determination that Pegram was not entitled to an award of damages for Cornerstone's failure to install the crushed stone base as required by the contract specifications.

## C. CONSTRUCTION DEBRIS

The trial court found that Cornerstone did breach the contract by disposing of construction debris in the subgrade, which was in violation of the contract; however, the court awarded no damages on this issue finding that damages would be the cost to repair and that Pegram had failed to introduce an itemized cost of repair for removing the construction debris.

In a related issue, Pegram argues that the trial court erred by failing to award it any damages for Cornerstone's disposal of construction debris by burying it within the construction site. The trial court found that the evidence demonstrated there was construction debris buried outside the door of the town hall in the parking lot subgrade, that the debris was from this construction, and that Cornerstone was responsible for this debris. The court further found that the debris would cause the pavement to fail. Therefore, the court held that Pegram would be entitled to damages, however, the court found that Pegram failed to provide an itemized cost to remove the construction debris and repair that area alone.[5] Therefore the court could not make an award of damages. We believe the evidence preponderates against the trial court's findings that the construction debris would cause the pavement to fail. While Mr. Bivens testified that construction debris could cause pavement to fail, the area where the construction debris was found was not experiencing any pavement failure and the amount of debris was extremely limited. Additionally, we agree with the trial court's holding that Pegram failed to establish an itemized cost of repair for the removal of the construction debris.

---

[5]Pegram introduced evidence to prove the cost to repair the parking lot, but it did not itemize the cost to remove and repair the area where the construction debris was located.

### D. PUNITIVE DAMAGES & DISCRETIONARY COSTS

Pegram argues it proved by clear and convincing evidence that Cornerstone acted intentionally so as to support an award of punitive damages. Specifically, Pegram contends that the proof at trial showed that Cornerstone intentionally failed to construct the subgrade to contract specifications by failing to install satisfactory fill, failed to install the appropriate amount of crushed stone base, and buried construction debris. We have determined that Pegram is not entitled to any damages based upon any of those arguments and therefore we find that Pegram is not entitled to an award of punitive damages.

Pegram also contends that the trial court erred in assessing the costs of the litigation against it as opposed to Cornerstone. Having affirmed the trial court on all issues, we affirm the trial court's assessment of discretionary costs against Pegram.

### II.  SUMMARY JUDGMENT FOR NATIONAL GRANGE

Pegram also appeals the summary dismissal of its claim against National Grange Mutual Insurance Company, which provided the Performance Bond assuring Cornerstone's performance under the contract. National Grange's only potential liability in this action is due to the fact it is the surety for Cornerstone fulfilling its obligations to the Town of Pegram under the construction contract. We have determined that Pegram is not entitled to any damages from Cornerstone; therefore, Pegram's claims against National Grange are moot.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellant, the Town of Pegram.

_____
FRANK G. CLEMENT, JR., JUDGE