# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 24, 2013 Session

# MARK BREWER ET AL. v. KITCHEN DESIGNS AND CABINETRY ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 09C9      Hamilton V. Gayden, Jr., Judge**

**No. M2012-01248-COA-R3-CV - Filed April 5, 2013**

General contractor filed breach of contract action against homeowners, alleging the homeowners failed to pay invoices on an extensive home renovation project. The homeowners denied there were outstanding invoices and filed counterclaims for breach of contract and violation of the Tennessee Consumer Protection Act against the general contractor and its owner, in his individual capacity, who contractually agreed to supervise the project for an additional fee. The homeowners alleged the general contractor failed to perform the contract in a workmanlike manner; they also asserted a claim against the owner asserting that he agreed to personally supervise the project for a percentage of the contract and that he breached his agreement by failing to properly supervise the work. The trial court, Judge Barbara Haynes presiding, awarded summary judgment to the homeowners on all claims and counterclaims. On the homeowners' counterclaims, Judge Haynes also awarded treble damages, attorney's fees, and costs, pursuant to the Tennessee Consumer Protection Act. The counter-defendants filed a motion to alter or amend the decision as to the counterclaims; however, Judge Haynes retired before ruling on the motion. The case was then assigned to Judge Hamilton Gayden and, following a hearing, he denied the motion to alter or amend. The counter-defendants appealed. We affirm the summary dismissal of the general contractor's breach of contract claim for it is undisputed the homeowners paid the contract amount in full. As for the homeowners' counterclaims, we affirm the grant of summary judgment in favor of the homeowners on their breach of contract claim against the general contractor and the award of damages for failing to perform the contract in a workmanlike manner. We also affirm the grant of summary judgment in favor of the homeowners against the supervisor for failing to properly supervise the work; however, we find the evidence insufficient to establish the damages that proximately resulted from the supervisor's breach as distinguished from the damages resulting from the general contractor's breach. As for the homeowners' claims that the general contractor and the supervisor violated the Tennessee Consumer Protection Act, we have determined there are material facts in dispute concerning whether the contractor or the supervisor used or employed unfair or

deceptive acts or practices in violation of the TCPA; therefore, summary judgment as to the TCPA claims was not appropriate. We, therefore, reverse the grant of summary judgment on the TCPA claims as to the contractor and the supervisor and remand these claims, and the determination of damages for failing to properly supervise, for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Charles M. Duke and John D. Kitch, Nashville, Tennessee, for the appellants, Kitchen Designs and Cabinetry, and James E. Richie.

George E. Barrett, James Bryan Lewis, and Seth Marcus Hyatt, Nashville, Tennessee, for the appellees, Mark and Mary Brewer.

**OPINION**

In 2006, Mark and Mary Brewer ("the Brewers") entered into a contract with Kitchen Design and Cabinetry LLC ("KDC") for an extensive home renovation project. The contract was structured as a "stipulated sum" agreement[1] with a total cost of $443,683.54. The parties' agreement for this phase of the project (there were three phases) was memorialized with a standard, fill in the blank, AIA form agreement[2] that identified the parties, the project (the Brewers' residence) and the architect, and stated the contractor shall achieve substantial completion within 240 days. Attached to the agreement was the stipulated contract sum, which specified the budget for specific categories of work (e.g. $980 for permits/fees; $2,660 for dumpsters; $2,300 for interior demolition), an 18% "Contractors Fee" budgeted at $67,680.54, for a Total Cost for above work of $443,683.54.[3] The written agreement provides few details about the project (other than referencing architectural plans).

---

[1]Unlike a "cost plus" agreement, in a "stipulated sum" agreement, the client and the contractor agree to a total cost for the project before commencing work. If the project exceeds the stipulated amount, the contract stands to lose money; however, if the project is completed for less than the stipulated amount, the contractor keeps the remaining money as profit.

[2]It was titled "AIA Document A101 - 1997, Standard Form of Agreement Between Owner and Contractor where the basis of payment is STIPULATED SUM." (emphasis in form agreement).

[3]Immediately below Total Cost appeared: "Contingency 5%" & "Budget $22,184.18."

Although the written agreement does not expressly state that James E. Richie, the owner and chief executive officer of KDC, agreed to personally supervise the work in consideration for the 18% "contractor's fee" referenced above, it is undisputed that Richie agreed to personally supervise the work in consideration for that fee.[4]

The Brewers subsequently decided to add two more phases to the work and KDC agreed to construct a screened-in porch at a cost of $81,050.42 and a new garage at a cost of $276,569.53, which brought the total cost of all three phases of the work to $825,553.78, inclusive of the 18% supervision fee. The additional work was never memorialized in writing but the material provisions of the additional work and cost are not in dispute.

As the work progressed, the Brewers became unhappy with the quality and timeliness of the work done by KDC and Richie. The situation came to a head in May 2008, after Mr. Brewer contacted the Tennessee Board for Licensing Contractors to complain that KDC had not performed any work on the home since December 2007.

On January 5, 2009, KDC filed suit against the Brewers for breach of contract, alleging that the Brewers owed approximately $90,147.58 in unpaid invoices. The Brewers filed an Answer and Counter-Complaint asserting they timely paid all invoices submitted by KDC and thus KDC's complaint was without merit. The Brewers asserted counterclaims against KDC and Richie, individually. They alleged that KDC breached the contract by failing to perform the contract in a workmanlike manner and failing to comply with the specifications of the contract. The Brewers also alleged that they were forced to hire other contractors to make repairs and complete the work KDC failed to do. As for Richie, the Brewers alleged that individually Richie agreed to supervise the project in consideration of the 18% contractor's fee and that he breached that agreement by failing to properly supervise the project. The Brewers additionally alleged that KDC and Richie violated the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101 through 130 (hereafter, "TCPA"), by engaging in "deceptive acts and practices," as those are defined in sections 47-18-104 and 47-18-109. The Brewers sought damages to cover the cost of completing the construction and repairing the defects for the alleged breaches, as well as treble damages, attorney's fees, and costs, for the TCPA violations.[5]

---

[4]The record reveals the Secretary of State administratively dissolved KDC's charter as a limited liability company on December 16, 2001, which preceded the contract at issue, and KDC's charter was not reinstated until April 13, 2007, which was after KDC entered into the agreement with the Brewers. Thus, KDC was not a limited liability company when the contract was entered into.

[5]In their first Answer and Counter-Claim, the Brewers also alleged causes of action for unjust enrichment and negligent infliction of emotional distress, which they later amended to also include

(continued...)

On April 16, 2010, the Brewers filed a motion for summary judgment as to KDC's claim against them for the unpaid invoices. The Brewers presented documentation, in the form of personal checks, showing that they had paid $840,418.81 to KDC, or $14,885.03 over the contract price; thus, they argued, KDC's claim for breach of contract had no merit and in fact, KDC owed them money for over-payments.[6] KDC opposed the motion based on its allegation that there were change orders which increased the actual cost of the project to $898,809.61, leaving a balance of $58,390,80 owed by the Brewers.[7]

Judge Haynes granted the Brewers' motion in its entirety by Order entered May 28, 2010 (hereafter, "the May 2010 Order"), thereby summarily dismissing KDC's complaint and ordering KDC to disgorge $14,885.03 to the Brewers.

The Brewers then filed a motion for summary judgment as to their counterclaims against KDC and Richie ("Counter-Defendants" or individually by name). The motion was supported by a Statement of Undisputed Facts, excerpts from Richie's deposition, and affidavits from several home repair and design contractors who inspected or made repairs to the work done by KDC. The motion was first heard on May 20, 2011, at which time Judge Haynes instructed the Brewers to allow the Counter-Defendants to inspect the property in the next thirty days. The Counter-Defendants, however, did not inspect the property.

The motion came on for hearing again on June 17, 2011, at which time Judge Haynes granted the Brewers' second motion for summary judgment as to the liability of KDC and Richie, after noting that the affidavits submitted by the Brewers were "unopposed," and stating:

> Based on the record in this case, the pleadings filed by the parties, the unopposed affidavits, as well as the oral arguments, the Court finds that [the

---

[5](...continued)
negligence and conversion. However, the only counterclaims the trial court considered and which are now before this Court are the breach of contract and TCPA counterclaims. The Brewers voluntarily dismissed the counterclaim for negligent infliction of emotional distress, and elected not to pursue the unjust enrichment, negligence, and conversion counterclaims.

[6]There was also an issue regarding several window screens which the Brewers had paid for but which KDC never delivered or installed. However, when the Brewers filed the April 16, 2010, motion for summary judgment, KDC agreed to deliver and install the window screens.

[7]KDC also filed a motion to amend its original complaint to include the change order allegations. The record does not contain an order addressing the motion to amend; however, the trial court had previously set an amended pleading deadline of June 31, 2009, approximately ten months prior to KDC's motion to amend.

Brewers'] Motion for Summary Judgment should be GRANTED as to liability for the poor construction work on [the Brewers'] home in violation of the contract between the parties and the Tennessee Consumer Protection Act.

(Hereafter, "the June 2011 Order").

At the Brewers' request, Judge Haynes appointed a Special Master to determine damages. In the proceedings before the Special Master, the Brewers submitted an affidavit from Chance Formby, a licensed contractor and professional estimator, who concluded that the cost of repairs/completion of the project totaled $73,569.10. Again, the Counter-Defendants presented no evidence to dispute the testimony of Mr. Formby. The Special Master deducted Mr. Formby's fee of $11,752.80, and the $14,885.03 which the Counter-Defendants had already paid pursuant to the May 2010 Order, and concluded that the Brewers were entitled to a total of $47,011.25 in damages for KDC's breach of contract.

As for the counterclaims against Richie for failing to properly supervise the project, the Special Master stated, "As the contract called for a construction cost of $840,418.81, Mr. Richie's fee was to be $151,275.38." The Special Master further found:

> Given that Mr. Richie offers no proof in opposition to the figures calculated by the Brewers, the Special Master finds that the Brewers have made an adequate showing of the damages due to them for payments made to Mr. Richie under the contract. Hence, the Special Master recommends that the Court find the total damages due to the Brewers for payments made to Mr. Richie directly to be $151,275.38.

Therefore, the damages recommended by the Special Master were $47,011.25 for KDC's breach of the construction contract and $151,275.38 for Richie's failing to properly supervise, for a total award of $198,286.64 in damages for breach of contract.

By Order entered January 20, 2012, Judge Haynes accepted the Special Master's recommendation and entered an order to that effect. In the same order Judge Haynes also awarded treble damages against KDC and Richie totaling $594,859.92 for violating the TCPA, and attorney's fees and expenses in the amount of $154,593.23, for a total judgment of $749,453.15 on the Brewers' counter-claims (hereafter "the January 2012 Order").

On February 21, 2012, Counter-Defendants filed a Motion to Alter or Amend the June 2011 and January 2012 Order.[8] Shortly thereafter, Judge Haynes retired and the case was transferred to the First Circuit Court of Davidson County, Judge Hamilton Gayden presiding. Judge Gayden denied the Motion to Alter or Amend by Order entered May 8, 2012. Counter-Defendants appealed.

## ANALYSIS

### I. RULE 63 OF THE TENNESSEE RULES OF CIVIL PROCEDURE

For their first issue, Counter-Defendants contend that, after the pending case was re-assigned following Judge Haynes' retirement, Judge Gayden erred by failing to comply with mandatory provisions of Rule 63 of the Tennessee Rules of Civil Procedure.

Rule 63 "governs situations when a case must be assigned to another judge because the judge originally presiding over the case is unable to proceed." *Shofner v. Shofner*, 181 S.W.3d 703, 711 (Tenn. Ct. App. 2004). The rule provides:

> If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a trial or hearing without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. In any trial or hearing, with or without a jury, the successor judge may recall any witness.

Tenn. R. Civ. P. 63.

As this court noted in *Shofner*, Rule 63 requires that "[t]he newly assigned judge must either certify familiarity with the record and determine that the proceedings may continue . . . or grant a new trial." *Shofner*, 181 S.W.3d at 711. The record before us reveals that Judge Gayden, as the successor judge, complied with Rule 63 by familiarizing himself with the record and determining that the remaining proceedings, albeit only a motion to alter or amend, could continue with him presiding. Accordingly, we find no Rule 63 error with the case continuing with Judge Gayden presiding as he did.

---

[8]The Counter-Defendants did not include the May 2010 Order in their Motion to Alter or Amend.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008) The appellate court makes a fresh determination that the requirements of Rule 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). As does the trial court, the appellate court considers the evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor. *Martin,* 271 S.W.3d at 84; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, the appellate court first determines whether factual disputes exist. If a factual dispute exists, the court then determines whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to establish the existence of the essential elements of the claim. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. If, however, the moving party does not properly support the

motion, then the nonmoving party's burden to produce either supporting affidavits or discovery is relieved and the motion must fail. *McCarley*, 960 S.W.2d at 588; *Martin,* 271 S.W.3d at 83.

To make this showing and shift the burden of production, a moving party may: 1) affirmatively negate an essential element of the nonmoving party's claim; or 2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Martin*, 271 S.W.3d at 83; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd*, 847 S.W.2d at 215 n.5. Whichever approach the moving party takes, both require more than assertions of the nonmoving party's lack of evidence. *Martin*, 271 S.W.3d at 83-84. In addition, the moving party must present evidence that more than "raises doubts" about the ability of the nonmoving party to prove its claim at trial. *Id.* at 84. The moving party must produce evidence or refer to previously submitted evidence. *Id.*; *accord Hannan*, 270 S.W.3d at 5. Thus, to negate an essential element of a claim, a moving party must refer to evidence that tends to disprove an essential element of the claim made by the nonmoving party. *Martin*, 271 S.W.3d at 84.

The trial court granted summary judgment to the Brewers on all claims and counter-claims filed by the Brewers and both KDC and Richie contend that each grant of summary judgment was error because there are disputed issues of material fact regarding each claim and counter-claim. Keeping the above summary judgment principles in mind, we will consider each ruling in turn.

### III. KDC'S BREACH OF CONTRACT CLAIM

KDC sued the Brewers for breach of contract asserting that the total contract price was $825,553.78 and that, as of December 2007, the Brewers still owed $90,147.58. The nonpayment of invoices was the only basis for KDC's breach of contract claim. The Brewers denied owing any money and claimed that KDC owed them a refund for overpayments. In their motion for summary judgment, the Brewers submitted copies of personal checks written to KDC which totaled $840,418.81, which exceeded the contract price of $825,553.78 alleged in KDC's complaint.[9]

---

[9]The checks were written in the following amounts: $122,878.26 on June 14, 2006; $46,255.44 on June 28, 2006; $18,128.93 on July 15, 2006; $58,821.40 on July 26, 2006; $28,534.69 on August 14, 2006; $29,100.15 on September 6, 2006; $23,342.86 on September 8, 2006; $20,237.00 on September 18, 2006; $43,783.45 on October 2, 2006; $15,124.19 on October 30, 2006; $74,551.83 on November 15, 2006; $19,750.17 on December 4, 2006; $34,708.21 on December 14, 2006; $48,363.92 on December 23, 2006; $28,396.80 on January 19, 2007; $34,558.69 on February 2, 2007; $99,463.34 on March 13, 2007; $94,419.51 on June 7, 2007.

The Brewers filed a motion for summary judgment seeking to dismiss KDC's complaint that was supported by a Statement of Undisputed Facts and documents in support thereof, including the deposition of Richie. KDC filed a response to the motion. The trial court granted the motion thereby summarily dismissing KDC's complaint.

On appeal, KDC asserts that the trial court's holding is in error because, in addition to the original contract price of $825,553.78, there were change orders resulting in additional charges of $73,255.83; thus, the revised contract price totals $898,809.61. KDC, therefore, asserts the Brewers owe $58,390.80. At first blush, this appears to be a classic dispute of material facts; however, upon examination of the proof submitted by the parties on this motion, we find the material facts concerning the contract price and the payments by the Brewers are not in dispute. Therefore, summary dismissal of KDC's claim for breach of contract against the Brewers was proper.

"The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Pursuant to their motion for summary judgment and supporting evidence, the Brewers negated the elements of breach and damages by showing that the contract price was $825,553.78 and the amount paid was $840,418.81. The Brewers' further submitted the deposition testimony of Richie wherein he admitted the contract price was $825,553.78 and that he received the Brewers' payments on behalf of KDC that totaled $840,418.81. Thus, the Brewers shifted the burden of persuasion to KDC to "produce specific facts establishing that genuine issues of material fact exist." *Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588, *Byrd*, 847 S.W.2d at 215)).

Significantly, KDC produced no facts, no evidence in response to the Brewers' motion.[10] Further, KDC produced no change orders or invoices submitted to the Brewers that had not been paid and it produced no affidavits or deposition testimony to dispute the facts relied upon by the Brewers. KDC merely relied on the deposition of Richie, however, his testimony was of no benefit to KDC because Richie made contradictory statements regarding the change orders, he testified that he did not know what the total contract price was or how

---

[10]KDC could have responded to the motion by: (1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial, or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06. *Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588).

much money KDC received from the Brewers. Richie also asserted that the Brewers owed KDC approximately $90,000; however, in KDC's response to the Brewers' motion, KDC alleged the Brewers owed $58,390.80. Going back to Richie's deposition testimony, there are several times when he states that the $825,558.73 figure does not include the change orders, but that he did not remember the total cost of the change orders, and that he did not have any copies of the change orders or of any unpaid invoices, that he could not produce them, and he was unable to explain how he arrived at the $90,000 figure. At one point in his deposition Richie states, "[t]hey paid the change orders. . . . They paid the change orders separately, which would not be included." Richie also testified that, "[Mr. Brewer] paid me regularly, when I submitted an invoice."

"A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Martin*, 271 S.W.3d at 84 (quoting *Byrd*, 847 S.W.2d at 215). Viewing Richie's contradictory and confusing deposition testimony in the light most favorable to KDC, we find it fails to establish a genuine factual dispute regarding the existence of unpaid change orders and KDC provided no other facts or evidence to dispute the Brewers' evidence. Thus, the material facts are undisputed.

Alternatively, KDC asserts that the May 2010 Order does not comply with Rule 56.04 of the Tennessee Rules of Civil Procedure because the Order does not "state the legal grounds upon which the court denies or grants the motion, . . ." The order states that KDC's complaint was dismissed and KDC ordered to disgorge "the overpayment of $14,885.03 by the Brewers to Mr. Richie and KDC . . . ." The only issue before the court, as it pertains to this motion, was whether the Brewers owed KDC for unpaid invoices, and the trial court's ruling could not be more obvious. The court implicitly found the Brewers had overpaid KDC by $14,885.03 and KDC was obligated to repay the overpayment. Thus, we find no error in this regard. *See Burse v. Hicks*, No. W2007-028480COA-R3-CV, 2008 WL 4414718, at *2 (Tenn. Ct. App. Aug. 19, 2008) (stating that, "[t]he record presents a clear legal issue – duty in a negligence case – that was almost certainly the basis for the trial court's decision to grant summary judgment," and affirming.) (citing *Church v. Perales*, 39 S.W.3d 149, 158 (Tenn. Ct. App. 2000)).

For the above reasons, we find no error with the trial court's summary dismissal of KDC's breach of contract claim against the Brewers, and the award of the $14,885.03 to the Brewers for their overpayments.

IV. THE BREWERS' COUNTERCLAIMS

The Brewers asserted three separate claims. They asserted a breach of contract claim against KDC for failing to perform the construction in a workmanlike manner; a breach of

contract claim against Richie for failing to properly supervise the work; and a claim against KDC and Richie for violating the TCPA, Tenn. Code Ann. §§ 47-18-109; 47-18-104(b)(7), (27) (2009), by engaging "in a pattern of deceptive acts and practices."[11]

As stated earlier, Judge Haynes granted summary judgment as to the Counter-Defendants' liability for each of the counterclaims. The June 2011 Order granting summary judgment on these counterclaims provides:

> On March 3, 2011, [the Brewers] filed a Motion for Summary Judgment as to [Counter-Defendants'] liability for breach of contract and violations of the Tennessee Consumer Protection Act arising from the quality of the construction work performed on the Brewers' home by Counter-Defendants.
>
> The Motion for Summary Judgment was based on deposition testimony from Richie, as well as expert affidavits that were filed contemporaneously with the Brewers' motion. . . . Counter-Defendants failed to filed any counter-affidavits raising questions about Counter-Plaintiffs' motion and affidavits.
> . . . .
> Based on the record in this case, the pleadings filed by the parties, the unopposed affidavits, as well as the oral arguments, the Court finds that [the Brewers'] Motion for Summary Judgment should be GRANTED as to liability for the poor construction work on [the Brewers'] home in violation of the contract between the parties and the Tennessee Consumer Protection Act.

KDC and Richie contend there are genuine issues of material fact on these counterclaims; thus, they assert, the trial court erred in granting summary judgment.

---

[11]The TCPA in force during all relevant times in this case provided for a private cause of action for "[a]ny person who suffers an ascertainable loss . . . as a result of the use or employment by another person of an unfair or deceptive act or practice." Tenn. Code Ann. § 47-18-109(a)(1) (2009); *see also* Tenn. Code Ann. § 47-18-104(b)(27) (2009).

Section -109(a)(1) of the Act was amended in 2011 to, *inter alia*, limit private rights of action to those in which losses are sustained as a result of "an unfair or deceptive act or practice *described in § 47-18-104(b)*." *See* Tenn. Code Ann. § 47-18-109(a)(1) (2011) (emphasis added); *see also* 2011 Tenn. Pub. Act. Ch. 510 § 20. The amendment also eliminated Tennessee Code Annotated § 47-18-104(b)(27) ("Engaging in any other act or practice which is deceptive to the consumer or to any other person.") as a basis for a private right of action. Subsection -104(b)(27) is now only enforceable by the attorney general. *Id.* However, the amendments only apply to causes of action accruing after October 1, 2011. *See* 2011 Tenn. Pub. Act. Ch. 510 § 24. Because this action accrued between 2007 and 2009, we refer to the prior version of the TCPA, which provided for the broader basis for private rights of action under Sections -109 and -104(b).

## A. KDC's Breach of Contract

The contract between the Brewers and KDC is silent regarding the standard of performance for the work; nevertheless, in Tennessee, every construction contract is "accompanied by an implied obligation to perform the service skillfully, carefully, diligently, and in a workmanlike manner." *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2008) (citations omitted). "[T]he failure to perform a building contract in a workmanlike manner constitutes a breach of the contract." *Bowling v. Jones*, 300 S.W.3d 288, 291 (Tenn. Ct. App. 2008). The proper standard against which to judge KDC is "the standard of workmanship prevailing in the area coupled with conformity to the applicable codes." *Carter v.* Krueger, 916 S.W.2d 932, 935 (Tenn. Ct. App. 1995); *see also Wilkes v. Shaw Enterprises, LLC*, No. M2006-01014-COA-R3-CV, 2008 WL 695882, at *8 (Tenn. Ct. App. March 14, 2008).

The Brewers alleged that KDC breached the contract by failing to use workmanlike practices. They provided a long list of defects with the work including, *inter alia*, failing to insulate a bedroom ceiling, improper insulation in other areas of the house, the use of untreated floor boards which became moldy, improper installation of the gas water heater, use of untreated wood shims that provide structural support for the house, improper landscaping that caused drainage problems, leaking due to improperly installed shower pan which destroyed the dining room ceiling, improperly routed HVAC drain pipe, and poor paint work. The Brewers also alleged that KDC deviated from the agreed-upon plans in several significant ways, without the Brewers' consent. In support of their motion for summary judgment, the Brewers submitted eight affidavits from trained, experienced contractors and subcontractors who repaired or inspected work done by KDC, and all of whom reported that the work done at the Brewers' home fell below industry standards.[12]

---

[12]The affidavit of Chance Formby, a licensed contractor and professional estimator since 1995, provides a long list of problems with the work done, most notably that "it is standard construction practice to install insulation between the attic and living spaces, and the prior workers left more than 700 square feet of living space exposed," the installation of "untreated wood shims between the steel posts and the laminated wood beam [in the basement] to make sure the beam was level, which is a violation of Metro codes." Windsor Waits, a landscaper with over twenty years' experience, stated in his affidavit that a "six percent slope away from the home is required," and that the slope at the Brewers' "was certainly not up to the standard for the profession or the community," which caused major drainage problems in the Brewers' yard. Tim Patterson, a tile and stone installer, stated that "[t]he work I observed in the bathroom certainly did not meet the standard for this type of work," specifically, faulty installation of a shower pan, which caused leaking. Katherine Evans, an interior designer since 1984, listed several aesthetic issues, including that "there are several areas where the drywall was not sanded properly before paint was applied." She concluded that, "in my professional opinion, these issues should have been addressed to the owner's satisfaction prior to leaving the jobsite." Charlie Wehby, a plumber for over thirty years who fixed the shower leak and a broken

(continued...)

KDC submitted no proof to rebut any of the affidavits; it is therefore undisputed that the work was not performed in a workmanlike manner. KDC relies solely on the argument that it was not given an opportunity to cure these defects. In support of this contention, KDC offered a letter from its trial counsel to counsel for the Brewers written in August 2008. The letter states that Richie reviewed a "punch list" previously submitted by the Brewers, and that "he indicated that he can assemble a crew to go to Mr. and Mrs. Brewer's home to take care of the items set out as being incomplete," in exchange for "payments towards the amounts owed," which "total $90,147.48." The unsworn letter was written eight months after KDC last worked on the Brewers' home, and one month after Mr. Brewer contacted the Tennessee Board for Licensing Contractors about KDC, and the letter only addresses incomplete work, not the work that was completed using poor construction practices. Further, KDC offered excerpts of Richie's deposition, wherein he admits to receiving almost-daily emails over the course of the project from Mr. Brewer expressing growing dissatisfaction with KDC's work. As for the deposition, if anything, it establishes that Richie and thus KDC were on notice that there were problems with the work and had been for months prior to December 2007.

Viewing this proof in the light most favorable to KDC, we have concluded that KDC failed to rebut the evidence presented by the Brewers and, therefore, there is not a genuine issue of material fact for trial on the issue of KDC's liability for breach of contract. *See Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588, *Byrd*, 847 S.W.2d at 215)). At best, the evidence submitted by KDC is irrelevant to the issue of the workmanship and notice; at worst, it further establishes that KDC was aware of the problems with its workmanship and failed to correct the problems. *See Greeter Const. Co. v. Tice*, 11 S.W.3d 907, 911 (Tenn. Ct. App. 1999) (quoting *McClain v. Kimbrough Const. Co., Inc.*, 806 S.W.2d 194, 198 (Tenn. Ct. App. 1990) (stating that, "it is . . . true that, 'notice ought to be given when information material to the performance of the contract is within the peculiar knowledge of only *one* of the contracting parties.'").

KDC does not challenge the Special Master's calculation of $47,011.25 in damages on the breach of contract counterclaim. Therefore, we affirm the trial court's determination

---

[12](...continued)
faucet in the Brewers' home, stated, "[i]nstalling a drain on a relatively new shower is not typical and would not be necessary if the original shower installation was done properly. In my opinion, the original installer performed work below the prevailing standard." Steven Davis, who works in the painting, drywall installation and sealing business, described problems with paint, leaks, and outside stonework, and stated, "[a]ny contractor would know this type of stonework requires sealing. When I observed the work on the home, it was certainly not up to the standard for this type of work in the area." Tom Wiener, a gardener, stated that "[t]he problems with the gardening included improper grading in the backyard, poor quality soil in the garden and backyard, and an insufficient layer of topsoil. The presence of these problems indicates the work was not up to the standard for the area."

regarding the liability and calculation of damages for the Brewers' counterclaim for breach of contract against KDC.

## B. Richie's Breach of Contract for Failing to Properly Supervise

The Brewers asserted a breach of contract claim against Richie, individually, for failing to properly supervise the work. Although the written agreement between the Brewers and KDC does not expressly state that Richie individually agreed to supervise the work in consideration for the 18% "contractor's fee," it is undisputed that Richie agreed to personally supervise the work in consideration for the 18% contractor's fee.[13]

In their motion for summary judgment as to Richie, the Brewers relied on the same evidence submitted in support of the motion concerning KDC's breach of contract, namely Richie's deposition and affidavits from the contractors and subcontractors who inspected or subsequently repaired KDC's work. The Brewers asserted that the undisputed evidence of KDC's poor workmanship established that Richie failed to properly supervise the project; thus, Richie breached his agreement to properly supervise the work. We agree and find the material evidence on the issue of Richie breaching this duty is undisputed. However, we find the evidence presented by the Brewers is not sufficient to shift the burden of persuasion to Richie, as the non-moving party, on the issue of damages that flow from this breach. *See Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

Richie was under a contractual duty to "perform services skillfully, carefully, diligently, and in a workmanlike manner," *Winters*, 354 S.W.3d at 293 (holding that all contracts for services have this implied contractual duty), and the material evidence concerning Richie's failure to properly supervise the work is not in dispute. However, the fact he breached his duty to properly supervise does not establish the amount of damages resulting from his breach that are different from or additional to the damages resulting from KDC's breach of contract for its substandard work. Specifically, the record before us does not specify the damages that resulted from Richie's breach that are different from or additional to the damages resulting from KDC's breach of contract. Thus, an award of damages against Richie for breach of contract was not appropriate at the summary judgment stage.

---

[13]Two of the material facts that were undisputed for the purpose of the summary judgment motions were: "Mr. Richie was to personally supervise the work" and "For his supervision [Mr. Richie] was to receive 18% of the total job cost."

Therefore, we affirm the determination that Richie breached his contractual duty to properly supervise the work but reverse the award of damages resulting from that breach. Therefore, we vacate the $151,275.38 judgment against Richie individually and remand the issue of damages to the trial court for further proceedings.

### C. Violations of the Tennessee Consumer Protection Act

The TCPA in force at the time this action accrued provides as follows:

> (a)(1) Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situation, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.
> . . . .
>
> (3) If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper, except that the court may not award exemplary or punitive damages for the same unfair or deceptive practice.

Tenn. Code Ann. § 47-18-109(a) (2009).

Pursuant to the TCPA, if the court finds that a party's use or employment of unfair or deceptive acts or practices was a willful or knowing violation of this part, the court may award treble damages and attorney's fees; however, as this Court recently explained in *Case Handyman Services of Tennessee v. Lee*, No. M2011-00751-COA-R3-CV, 2012 WL 2150857 (Tenn. Ct. App. June 13, 2012), a breach of contract for failing to perform in a workmanlike manner "does not necessarily rise to the level of an 'unfair or deceptive act or practice,' as that phrase is used in the Tennessee Consumer Protection Act." *Id.* at *10. *See also Id.* at *9 (quoting *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 786 (Tenn. Ct. App. 2010) ("'Although every breach of contract is arguably "unfair" in the colloquial sense, . . . the TCPA envisions something more than the simply incompetent performance of contractual duties.'").

The trial court awarded the Brewers treble damages against both KDC and Richie for violating the TCPA; however, neither the June 2011 Order and the January 2012 Order identify any acts or practices KDC or Richie used or employed that constituted a willful or

knowing violation of the TCPA to justify treble damages, attorney's fees, and costs. In the absence of such findings, we are left to infer from the award that the trial court based its findings on the fact that Richie billed the Brewers for his supervisory services without providing the appropriate supervision, and for KDC's poor construction practices.

The Brewers admit that the primary basis for their TCPA claim is Richie's deceptive billing practices, and they candidly acknowledge in their appellate brief that KDC's poor workmanship alone is insufficient to support a finding that KDC or Richie violated the TCPA. The record contains insufficient proof to establish that KDC used or employed unfair or deceptive acts or practices; the affidavits the Brewers submitted only detail the defects in the work. As noted above, a breach of contract for failing to perform in a workmanlike manner "does not necessarily rise to the level of an 'unfair or deceptive act or practice.'" *Lee*, 2012 WL 2150857, at *10; *Poole*, 337 S.W.3d at 786. We have also determined there are material facts in dispute regarding Richie's alleged deceptive billing practices.

For the above reasons, it was not appropriate to grant summary judgment in favor of the Brewers on their TCPA claims against KDC and Richie. We, therefore, reverse the grant of summary judgment against KDC and Richie on the homeowners' TCPA claims, along with the award of treble damages, attorney's fees, and costs, and remand these claims to the trial court for further proceedings.

### IN CONCLUSION

We affirm the summary dismissal of KDC's breach of contract claim against the Brewers. As for the Brewers' breach of contract claim against KDC, we affirm the grant of summary judgment in favor of the Brewers. As for the Brewers' breach of contract claim against Richie individually, we affirm the determination that Richie breached his contractual duty to properly supervise the work but vacate the $151,275.38 judgment against Richie individually and remand the issue of damages to the trial court for further proceedings. We reverse the grant of summary judgment on the Brewers' TCPA claims against KDC and Richie and these claims are remanded to the trial court for further proceedings consistent with this opinion.

Two-thirds of the costs of appeal are assessed against Appellants, Kitchen Design & Cabinetry, Inc. and James Richie, and one-third of the costs are assessed against the Appellees, Mary and Mark Brewer.

_____
FRANK G. CLEMENT, JR., JUDGE

-16-