# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 19, 2014 Session

## RONALD LAMPLEY, ET AL. V. TOWN OF CHAPEL HILL, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Marshall County**
**No. 11CV157     Franklin Lee Russell, Judge**

_____

**No. M2013-01335-COA-R3-CV - Filed April 15, 2014**

_____

A real estate developer entered an agreement with the Town of Chapel Hill to purchase sewer and water taps in exchange for the Town's extension of a sewer line to the developer's property. The developer paid the money and the Town extended the line, as agreed. Developer later lost the property through foreclosure before development occurred. When the property was sold to a third party, the Town transferred the sewer and water taps to the purchasers. The developer filed a complaint alleging the Town breached the agreement by transferring taps that belonged to the developer to the third party purchasers. The Town denied it breached the agreement and moved for summary judgment. The trial court granted the Town's motion for summary judgment and the developer appealed. We affirm. The agreement evidences the parties' intention that the sewer and water taps were to be used in connection with the development of the property the developer owned when the agreement was executed. When the developer lost the property through foreclosure, the developer had no more interest in the taps.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

BEN H. CANTRELL, SR. J, delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Vic L. McConnell, Joshua K. Chesser, Nashville, Tennessee, for the appellants, Ronald Lampley and Ron Lampley Construction, Inc.

Todd Moore, Matthew J. Crigger, Franklin, Tennessee, for the appellee, Town of Chapel Hill, Tennessee.

Anne C. Martin, Sam J. McAllester, III, Nashville, Tennessee, for the appellee, Capital Bank, N.A.

# OPINION

### I. BACKGROUND

Ron Lampley Construction, Inc. (the "Company") was a real estate development and construction firm that operated from 1995 until sometime in 2009. Ronald Lampley was the President of the Company. In 2004, the Company bought a parcel of undeveloped property north of Chapel Hill known as the Stammer Farm.

In November 2007, Mr. Lampley, on behalf of the Company, entered into an agreement (the "Agreement") with the Town of Chapel Hill (the "Town") for the purchase of water and sewer taps. The Agreement was titled "Town of Chapel Hill, Tennessee Sewer Force Main Extension Agreement Highway 31 and Eagleville Pike Extension Project." The Town represented in the Agreement that it wanted to extend its sewer service north "to existing and potential new development," which was defined as "the Project." Mr. Lampley was defined as "the Developer" and represented in the Agreement that he wanted to develop "certain property" and would "benefit from the extension of the sewer line." The route of the sewer line is described in Exhibit A to the Agreement. The line was to "end at a location on the Lampley property which is located on the south side of Eagleville Pike." Mr. Lampley signed the Agreement in his capacity as President of Ron Lampley Construction, Inc.

The Agreement began by stating "in consideration of the mutual promises herein, the parties agree as follows." Mr. Lampley agreed to purchase 50 sewer and water taps at $2,500 per tap, for a total of $250,000, which was to be paid to the Town within either 90 days of the date of the Agreement or ten days of the time when material was on the construction site and digging began. The Agreement stated, "The Town understands that the Developer's property may be sold during this time and the Developer agrees that either he or the purchaser of this property shall pay this amount and that the satisfaction of this agreement shall be a condition of any sale of the property."

The Agreement was expressly conditioned upon its approval by the Town's Board of Mayor and Aldermen and the subsequent construction agreement for the Project. The Agreement stated: "If the Town discontinues the Project for any reason, including the Town's inability to obtain other Developer participation, any tap fees purchased under this Agreement will be returned to the Developer."

2

In December 2007, the Company obtained a $500,000 line of credit from GreenBank. Mr. Lampley executed a Deed of Trust with respect to the Stammer Farm in favor of GreenBank to secure the line of credit. Out of these proceeds Mr. Lampley transferred $250,000 to the Town, thus satisfying the Company's obligation under the Agreement. The Town satisfied its obligation under the Agreement when it extended the sewer line up to the Stammer Farm.

Mr. Lampley subsequently filed a petition for bankruptcy under Chapter 7 in 2009. He was granted a discharge in 2010, and shortly afterwards, Capital Bank foreclosed on the Stammer Farm, the property securing his loan. Following the Bank's foreclosure on Mr. Lampley's property, the Bank sold this property to James and Nancy Moorehead.

As part of the sale of the property to the Mooreheads, the Town executed a document entitled "Transfer of Rights to Water and Sewer Taps and Sewer Force Main Extension Agreement." This document stated that the Mooreheads "have entered into a certain Agreement for Sale and Purchase of Real Estate with GreenBank for that property for which the water/sewer taps were purchased by Lampley," and that "the Town of Chapel Hill . . . does hereby transfer all right, title and interest in and to the Agreement,[1] and specifically including the 50 water/sewer taps heretofore purchased, unto the Buyers," the Mooreheads.

Following the Town's transfer of the sewer and water taps to the Mooreheads, Mr. Lampley filed a Complaint against the Town alleging breach of contract. Mr. Lampley asserts he is the owner of the sewer and water taps and that the Town breached the Agreement when it transferred these same taps to the Mooreheads. In his complaint, Mr. Lampley asserts damages of $250,000, which is the amount he paid for the taps.

Capital Bank, as successor to GreenBank, was permitted to intervene in the case. Both Capital Bank and the Town of Chapel Hill filed motions for summary judgment. Mr. Lampley also moved for summary judgment. The court held a hearing in February 2013 and granted summary judgment to the Town and the Bank. The court wrote in its Order that the defendants "have demonstrated that the Plaintiffs' evidence is insufficient to establish the essential elements of breach and damages with respect to Plaintiffs' breach of contract claim."

The trial court incorporated into its written Order its earlier ruling from the bench, which included the court's finding that the contract was not ambiguous. The court stated:

---

[1]The "Agreement" was defined as the earlier agreement between Mr. Lampley and the Town.

3

I don't find ambiguity in this contract. . . . [W]hen you look at it as a whole, I don't think it's ambiguous. . . .

If I did feel there was proof of a breach, I certainly don't think there's sufficient proof of damages here at all. I don't think you just look at what was originally paid, the $250,000, and say that's got to be the damage amount or the minimum damage amount because the town did expend money to put it out there to that property. So how could $250,000 be the amount of damages? So I don't believe that we have, in the record viewed today, sufficient evidence of either a breach or of damages flowing from what's alleged to be a breach.[2]

Mr. Lampley appeals the trial court's grant of summary judgment to the Town and the Bank. Mr. Lampley contends he did not get the benefit of what he paid for and he is entitled to damages as a result. According to Mr. Lampley, the Agreement does not limit the use of the water and sewer taps to the property that the Bank foreclosed upon and sold to the Mooreheads (the Stammer Farm). Mr. Lampley asserts (1) he owns other parcels of real estate in the area and that the taps could be used for this other property, and (2) before the agreement was executed, the administrator for the Town, Mike Hatten, told Mr. Lampley he could use the taps on any piece of property he owned.

## II. ANALYSIS

### A. Standard of Review

The requirements for a grant of summary judgment are well known. Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn R. Civ. P. 56.04; *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 214-15 (Tenn. 1993).

When considering a summary judgment motion, the trial court must view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in the non-moving party's favor, and discard all countervailing evidence. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Byrd*, 847 S.W.2d at 210-11. Accordingly, the court is not to "weigh" the evidence when evaluating a motion for summary judgment, or substitute its

_____

[2]The record does not contain a transcript of the hearing on the parties' summary judgment motions.

4

judgment for that of the trier of fact. *Martin*, 271 S.W.3d at 87; *Byrd v. Hall*, 847 S.W.2d at 211.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin*, 271 S.W.3d at 84; *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007). We review the summary judgment decision as a question of law. *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. Those requirements are that the filings supporting the motion show there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

The moving party has the burden of demonstrating it is entitled to judgment as a matter of law and that there are no material facts in dispute. *Martin*, 271 S.W.3d at 83; *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998). To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of his/her/its claim. Tenn. Code Ann. § 20-16-101; *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008).

## B.  Breach of Contract

The first issue in this case is whether the Town breached the Agreement when it transferred the sewer and water taps to the Mooreheads in 2010. To establish a cause of action for a breach of contract, Mr. Lampley and the Company must prove not only that the Town breached the Agreement, but that Mr. Lampley and the Company suffered damages as a result. *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011); *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Before determining whether the Town breached the parties' contract, we must interpret the Agreement to understand the obligations of the Town. The question of contract interpretation is a question of law. *Winters*, 354 S.W.3d at 291; *Guiliano v. Cleo, Inc*, 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, the trial court's interpretation of a contractual document is not entitled to a presumption of correctness on appeal. *Winters*, 354 S.W.3d at 291; *Angus v. Western Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). This court must review the document ourselves and make our own determination regarding its meaning and legal import. *Winters*, 354 S.W.3d at 291; *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993). Our review is governed by well-settled principles.

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The purpose of interpreting a written contract is to ascertain and give effect to the contracting parties' intentions, and where the parties have reduced their agreement to writing, their intentions are reflected in the contract itself. *Id.*; *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). "The intent of the parties is presumed to be that specifically expressed in the body of the contract." *Planters Gin Co.*, 78 S.W.3d at 890. Therefore, the court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. *Guiliano*, 995 S.W.2d at 95; *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes. *Planters Gin Co.*, 78 S.W.3d at 890.

We now turn to the terms of the Agreement. At the beginning of the Agreement, the second "WHEREAS" clause states that the Developer, Mr. Lampley, wants to develop "certain property" and "will benefit from the extension of the sewer line." Exhibit A to the Agreement specifies that the sewer main would be built "north along Highway 31A . . . and end at a location on the Lampley property."

Mr. Lampley agreed during his deposition that the Stammer Farm is the "certain property" described in the Agreement and was indeed the property the parties intended to benefit from the extension of the sewer line north. The Agreement contains no reference to any other property Mr. Lampley or the Company owned, or to any other proposed development by Mr. Lampley or the Company in the area that could be served by the sewer extension.

In exchange for Mr. Lampley's promise to pay the Town $250,000, the Town promised to extend the sewer line north to the Stammer Farm and to provide Mr. Lampley with fifty sewer and water taps to hook up to the houses he intended to build as part of his development of the Stammer Farm.[3] There is no dispute that Mr. Lampley paid the Town $250,000, as promised, and that the Town extended the sewer line north to the Stammer Farm, as the Town promised.

A contract is ambiguous if its meaning is uncertain and it may fairly be understood in more than one way. *Allstate v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (citing *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)). Only if a court

---

[3]The record contained evidence that the Chapel Hill Planning Commission approved for recording a preliminary plat for the development of the Stammer Farm on February 20, 2007.

determines that a contract is ambiguous will extrinsic or parol evidence be considered in determining the meaning of the contract. *Adkins v. Bluegrass Estates, Inc.*, 360 S.W.3d 404, 412 (Tenn. Ct. App. 2011). Extrinsic or parol evidence includes the parties' course of conduct and oral statements regarding the subject matter of the agreement that are not evidenced by the contract itself. *Id.*; *Harry J. Whelchel Co., Inc. v. Ripley Tractor Co., Inc.*, 900 S.W.2d 691, 692-93 (Tenn. Ct. App. 1995). However, "[i]f the contract is unambiguous, then the court should not go beyond its four corners to ascertain the parties' intention." *Adkins*, 360 S.W.3d at 412 (citing *Rogers v. First Tennessee Bank National Ass'n*, 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987)).

Mr. Lampley contends the Agreement is ambiguous because it does not expressly limit the use of the sewer and water taps to the Stammer Farm or limit the time frame within which the taps can be used, and that this ambiguity permits the introduction of parol evidence. The parol evidence Mr. Lampley wants the court to consider is a representation by the Town's administrator to Mr. Lampley before the Agreement was executed that Mr. Lampley would be able to use the sewer and water taps on any piece of property Mr. Lampley or the Company owned.

As our Supreme Court has instructed, "[a]mbiguity . . . does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) (quoting *Johnson v. Johnson,* 37 S.W.3d 892, 896 (Tenn. 2001)). "The court will not use a strained construction of the language to find an ambiguity where none exists." *Maggart*, 259 S.W.3d at 704 (citing *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975)).

Interpreting the Agreement as a whole, based on the plain meaning of its terms, we do not find the Agreement contains an ambiguity requiring the consideration of parol evidence. The parties agree the "certain property" referenced in the Agreement was the Stammer Farm. Mr. Lampley was involved in the drafting of the Agreement, and he could have inserted language in the Agreement reflecting an intent to use the sewer and water taps on property other than the Stammer Farm. In the absence of such language, however, we conclude the Agreement unambiguously reflects the parties' intention that the sewer and water taps Mr. Lampley purchased were to be used in connection with the properties developed on the Stammer Farm, and no other property. When Mr. Lampley lost the Stammer Farm due to the Bank's foreclosure of the property in 2010, Mr. Lampley also lost the sewer and water taps referenced in the Agreement. We thus conclude the Town did not breach the Agreement when it transferred the taps to the Mooreheads when they purchased the Stammer Farm property in 2010.

7

We next turn to the issue of damages. When he was asked during his deposition what value the sewer and water taps have, Mr. Lampley responded that they have no value unless there is a place to use them. He clarified, "But if they're just sitting there, they have no value." Mr. Lampley testified during his deposition that he did not own any undeveloped property that could access the sewer line at issue in the Agreement. Without property to connect to the sewer and water taps, Mr. Lampley is unable to establish a value for the taps. Thus, Mr. Lampley is unable to establish that he has suffered damages. *See BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 229 (Tenn. Ct. App. 2006) (court cannot make award of damages without proof of damages in breach of contract case).

Based upon our review of the record and application of the law to the facts of this case, we conclude the Town did not breach the Agreement when it transferred the sewer and water taps to the Mooreheads once Mr. Lampley lost the Stammer Farm through foreclosure. The sewer and water taps were meant to be used in connection with the property known as the Stammer Farm, and Mr. Lampley had no way to utilize the taps without an interest in that property. The Town and the Bank have thus satisfied their burden of establishing there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

### III. CONCLUSION

We affirm the trial court's decision granting the Town's and the Bank's motions for summary judgment. Costs of this appeal shall be taxed to the appellant, Ronald Lampley and Ron Lampley Construction, Inc., for which execution shall issue if necessary.

_____
BEN H. CANTRELL, SR. JUDGE

8